AGNES CAMERON, as Administratrix, etc., Respondent, *v.* THE
NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COM-
PANY, Appellant.

Where a railroad employee is injured through the negligent omission of
duty on the part of a co-servant, although it appears that similar omis-
sions by the latter had been habitual for some time prior to the injury,
unless the master has actual notice of the omission, or unless the negli-
gence is of such a character as to leave traces or evidences of it in the
work itself which could be seen or discovered by reasonable examina-
tion, or unless the delinquencies were frequently displayed under the
observation of some officer or foreman who represented the corporation
and had power to discharge the negligent employee, the law will not
imply notice to the company so as to charge it with the negligence
under all circumstances simply from the lapse of a certain time since
the co-employee began so to neglect his duties.

C., plaintiff's intestate, a brakeman in defendant's employ, was working
behind the cars of a freight train standing on a side track.  N., a fel-

low-brakeman, working on the same train, had opened the switch and left it unguarded, and in consequence a passing train ran over the switch upon the side track and came into collision with the freight cars, causing C.'s death. In an action to recover damages no negligence on the part of defendant in employing N. was claimed; he had been in its employ about a year. Defendant had promulgated rules for the guidance of its servants, which provided that "whoever opens a switch shall remain at it until it is closed or until he is relieved by some competent employee;" also, that every employee whose duties are prescribed by the rules must have a copy of them on hand and be conversant with every rule, and must report any infringement of them to the head of his department. N. was familiar with and had a copy of the rules; he, as a witness for plaintiff, testified that for about four months prior to the accident he had been accustomed to habitually violate said rule in regard to switches. It was not claimed that any officer of or person representing defendant had actual knowledge of these violations, and the officers having charge and power to employ and discharge help certified that they never heard of them and from inspection, observation and report they supposed N. was competent and faithful. *Held*, the evidence did not justify a finding that defendant was chargeable with negligence in failing to discover N.'s violation of said rule and in omitting to discharge him; that, under the circumstances, negligence could not be imputed to it simply because for four months it had failed to detect N.'s delinquencies; that it was more reasonable to suppose that C. had knowledge of them and he, having failed to report them, might be regarded as having voluntarily assumed the risks incident thereto.

*Coppins* v. *N. Y. C. & H. R. R. R. Co.* (122. N. Y. 557); *Whittaker* v *D. & H. C. Co.* (126 id. 549); *Wall* v. *D., L. & W. R. R. Co.* (54 Hun, 454; affd., 125 N. Y. 727), distinguished.

*Cameron* v. *N. Y. C. & H. R. R. R. Co.* (77 Hun, 519), reversed.

(Argued March 14, 1895; decided March 22, 1895.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 8, 1894, which affirmed a judgment in favor of plaintiff entered upon a verdict, and also affirmed an order denying a motion for a new trial.

This action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused through the negligence of defendant.

The facts, as far as material, are stated in the opinion.

*F. L. Westbrook* for appellant. The motion to non-suit and to dismiss the complaint should have been granted.

(Penal Code, §§ 195, 424; *Jaquinto* v. *R. R. Co.*, 49 Penn. St. 628; 2 Thom. on Neg. 1053; 3 Wood's Railway Law, § 392, 1505; *U. P. Ry. Co.* v. *Milliken*, 8 Kans. 655; *M. P. R. Co.* v. *Young*, Id. 660; *Davis* v. *R. R. Co.*, 20 Mich. 122; *Stafford* v. *R. R. Co.*, 114 Ill. 247; *M. C. R. R. Co.* v. *Dolan*, 32 Mich. 510–513; *Wright* v. *R. R. Co.*, 25 N. Y. 566; *E. & W. R. R. Co.* v. *Smith*, 125 Penn. St. 259; *Meech* v. *R. R. Co.*, 150 id. 610; *Rose* v. *R. R. Co.*, 58 N. Y. 222; *Lincoln* v. *French*, 105 U. S. 617; *McLosier* v. *R. R. Co.*, 21 Hun, 506; S. & R. on Neg. § 103; *Bradley* v. *R. R. Co.*, 62 N. Y. 102; *Malone* v. *Hathaway*, 64 id. 9, 10; *Lewis* v. *Seifert*, 116 Penn. St. 628, 649.) The question to Norton: " Did the conductor in charge of your crew and other employees know of the practice that you had been to in the way of opening switches?" was objected to on the ground, that notice to a fellow-employee is not notice to the company. The objection was overruled and defendant excepted. This is error for which the judgment should be reversed. (*Slater* v. *Jewett*, 85 N. Y. 69; *McDonald* v. *R. R. Co.*, 63 Hun, 287, 591; 138 N. Y. 663; *Brown* v. *R. R. Co.*, 72 Cal. 523; *Miller* v. *R. R. Co.*, 20 Oreg. 285, 293; *Thayer* v. *R. R. Co.*, 18 Ind. 226; *Smith* v. *Railway Co.*, 46 Mich. 263; *Cassidy* v. *R. R. Co.*, 76 Maine, 488; *Johnson* v. *T. B. Co.*, 135 Mass. 710; *McGinty* v. *R. Co.*, 155 id. 187; *Malone* v. *Hathaway*, 64 N. Y. 9, 11, 12; *Laning* v. *R. R. Co.*, 49 id. 534; *O. & M. R. Co.* v. *Collarn*, 73 Ind. 272; *Reiser* v. *P. C. Co.*, 152 Penn. St. 38, 41; *Sherman* v. *R. R. Co.*, 106 N. Y. 547; *Duryea* v. *Vosburgh*, 121 id. 68; *Brague* v. *Lord*, 67 id. 499; *Patten* v. *Ins. Co.*, 133 id. 450.) But were it conceded that Norton was incompetent and defendant had notice of it, to recover against defendant plaintiff had to go further, allege and prove that Allen Cameron was in no wise at fault or negligent; that his neglect, his want of care, did not contribute to his being injured. (*L. S. R. R. Co.* v. *Stupack*, 108 Ind. 1–6; *Dow* v. *R. R. Co.*, 8 Kans. 646; *McMillan* v. *R. R. Co.*, 20 Barb. 449–454; *Haskin* v. *R. R. Co.*, 65 id. 129–132; *Burke* v. *With-*

*erbee,* 98 N. Y. 567; *Shields* v. *R. R. Co.,* 133 id. 559; *P. & R. R. R. Co.* v. *Hughes,* 119 Penn. St. 313; *U. S. R. S. Co.* v. *Wilder,* 116 Ill. 100; *Murphy* v. *Crossan,* 98 Penn. St. 495; *Borden* v. *R. R. Co.,* 131 N. Y. 671; *Wiwirowski* v. *R. R. Co.,* 124 id. 425; *Bond* v. *Smith,* 113 id. 385.) When illegal evidence properly excepted to has been received during a trial, it must be shown that the verdict was not affected by it, or the judgment must be reversed. If the evidence may have affected the verdict, the error cannot be disregarded. (*Erben* v. *Lorillard,* 19 N. Y. 302; *Furst* v. *R. R. Co.,* 72 id. 547; *Wersebe* v. *R. R. Co.,* 49 N. Y. S. R. 619; *Lindsay* v. *People,* 63 N. Y. 153, 154; *People* v. *Smith,* 104 id. 506; Baylies' Tr. Pr. 500, 501; *H. R. R. Co.* v. *Decker,* 82 Penn. St. 124; *Frace* v. *R. R. Co.,* 143 N. Y. 182.)

*John M. Gardner* for respondent. Defendant was negligent for retaining in its service brakeman Norton, whose constant habit of violating rule 117, in leaving switches open and unprotected, not only made him incompetent, but resulted in the death of the deceased. (*Coppins* v. *N. Y. C. R. R. Co.,* 122 N. Y. 364; *Whitaker* v. *D. & H. C. Co.,* 126 id. 549; *Wall* v. *D., L. & W. R. R. Co.,* 125 id. 727.) The intestate was not guilty of contributory negligence. (*Johnson* v. *R. R. Co.,* 20 N. Y. 65; S. & R. on Neg. § 109.)

O'BRIEN, J. On the 2d of May, 1891, Allen Cameron, the plaintiff's son and intestate, about twenty years of age, received injuries while in the defendant's service as a brakeman on the West Shore branch of its road, at Marlboro station, which subsequently resulted in his death.

There is no dispute in regard to the facts which describe the accident. A train going north, at a high rate of speed, ran into an open cross-over switch upon the south-bound track and came in collision with some standing freight cars, behind which deceased was at work, causing them to be suddenly and violently moved back over him, resulting in the injury which subsequently produced his death. The accident would

not have occurred but for the fact that the switch had been left open and unguarded. That this situation was solely due to the negligence of a fellow-brakeman, one Norton, is also undisputed. The deceased and Norton were, on the day of the accident, working upon the same train, which was a freight train going south, and which had stopped at the station to take on some other cars. It was not claimed that the defendant was guilty of any negligence in employing Norton. He had been in the service about a year, as had also the deceased.

The plaintiff, however, called Norton as a witness, and he testified that for about four months prior to the accident he was accustomed to habitually violate the defendant's rules in leaving switches open and unguarded. It was not claimed that any officer or person representing the defendant had any actual knowledge of this conduct. On the contrary, the division superintendent, the roadmaster, yardmaster and dispatcher of trains, all of whom had power to employ and discharge help, testified that they never heard of such conduct on the part of Norton, and that from inspection, observation and report they supposed he was a competent and faithful man, and never heard of his violation of any rules.

The only question submitted to the jury was whether the defendant was not chargeable with negligence in failing to discover Norton's habitual neglect and violation of the rules and in omitting to discharge him. It is also conceded that the defendant had enacted and promulgated proper rules and regulations for the government of its servants and employees. It will be sufficient to refer to two of these rules. Rule four provides as follows : " Every employee of the company whose duties in any way are prescribed by these rules must always have a copy of them on hand, and must be conversant with every rule. He must render all the assistance in his power in the carrying of them out, and must report any infringement of them to the head of his department." Rule 117 provides that " whoever opens a switch shall remain at it until it is closed, or until he is relieved by some competent employee." It was Norton's violation of this last rule that caused the acci-

dent.   He opened the switch and left it open and unguarded, and the north-bound train entered upon it, thus producing the collision which resulted in the death of his fellow-brakeman. The omission of duty did not proceed from ignorance or want of instruction since Norton was familiar with the rules and had a copy of them in his possession.   There is no arbitrary rule of law that charges the master with constructive notice of the negligent omissions of duty on the part of a co-servant, after the lapse of a certain time, under all circumstances.   The doctrine of constructive notice is founded upon reasonable and just considerations, and the mere lapse of time is not always the test of negligence on the part of the master.   If a defect exists in the appliances furnished the servant for doing his work of such a character and for such a length of time as to enable the master to discover and remedy it by reasonable vigilance, inspection or examination, then the law will imply notice since he ought to know what can thus be ascertained.   The same rule will apply where the place furnished to the servant to do his work becomes defective, dangerous or unsafe by use or otherwise.   So when the negligence of a co-servant in performing his work is of such a character as to leave traces or evidence of it in the work itself which can be seen or discovered by reasonable examination, the master might be chargeable after it had continued for such a length of time as to render it reasonable to assume that he either must have known of the omission of duty, or could have known of it by the exercise of reasonable care, or where the incompetency of the servant is frequently displayed under the eye and observation of some officer or foreman who represents the corporation or had the power to discharge him.

But how was the master in this case to know that Norton habitually violated the rules for his own protection and that of his co-servants?   His work was performed on freight trains running over a long line of railroad, with little, if any, opportunity for any officer or representative of the company to watch or observe him at any one point.   He had sufficient ability and intelligence to do his work, and his omissions of

duty were purely willful or thoughtless. It would be mani-
festly unreasonable and unjust under such circumstances
to impute negligence to this defendant for the sole
reason that during four months it failed to detect his
delinquencies. The defendant had given him by its rules
plain and simple instructions to govern his conduct with
respect to the switches, and there was no reason to suspect
that they would be disregarded, since it was quite as con-
venient for him to obey as to violate them. Moreover, it had
in these same rules invited and requested all of his co-servants
to make prompt report to the company of any neglect or dis-
obedience of the rules on his part, and no complaint had been
made. It was reasonable to assume that his co-employees,
whose lives might be endangered by his neglect, would observe
and report his omissions of duty, if any, and if they failed
to observe any, how can it be said that the defendant
itself was in fault for not discovering what his co-servants
themselves had not discovered? The negligent acts of Norton
took place while he was working on the same train and in a like
capacity with the deceased. It is more reasonable to suppose
that they were done in his presence, or under his observation,
than to imply knowledge on the part of the defendant, and if it
can be said that the deceased knew of these omissions of duty
on the part of his fellow-brakeman, and failed to report them,
he might be regarded as voluntarily assuming the risks and
dangers incident to his association in a common work with a care-
less or incompetent co-servant. There is a manifest inconsis-
tency in assuming that the officers or representatives of the
defendant knew, or could have known, of Norton's violation of
the rules, and at the same time that the deceased did not. On
the evidence in the case it is true that the defendant's servant was
unfaithful, and that his want of care resulted in the death of the
plaintiff's intestate. But the defendant cannot be made liable
for his negligent act, unless it was at fault in selecting him for
the work, which is not claimed, or in failing to adopt such
means as ordinary prudence and care would dictate to secure
his fidelity, and we are unable to perceive what more it could

have done, unless it employed other men to watch his conduct, and that would be plainly an unreasonable requirement.

The learned court below has upheld the verdict in this case upon the authority of three recent cases in this court, which it was supposed sustained the principle upon which the recovery proceeded. (*Coppins* v. *N. Y. C. & H. R. R. R. Co.*, 122 N.Y. 557; *Whittaker* v. *D. & H. C. Co.*, 126 id. 549; *Wall* v. *D., L. & W. R. R.*, 54 Hun, 454; affd., 125 N. Y. 727.)

There is, we think, a clear distinction between these cases and the one at bar. In all of them there was evidence from which the jury could have found actual notice or knowledge of the incompetency of the co-servant on the part of the master. This case rests solely upon the doctrine of implied or constructive notice. The jury was permitted to find that the defendant was guilty of negligence in failing in some way to ascertain the fact that Norton had habitually violated the rules. In view of the conceded fact that there was no fault in his original employment, and that the defendant had adopted and promulgated suitable rules and had given proper directions for the regulation of his conduct, which it had, under the circumstances, and so far as appears, no reason to suppose would be or were disregarded, the judgment has no reasonable or just ground upon which to rest. The habitual and intentional disregard by Norton of the rules was, under the circumstances, entirely consistent with the exercise by the master of reasonable care; and in fixing responsibility for the results of the accident, that must be the only measure of duty. To hold that it was bound in any event, after the lapse of a reasonable time, to know the delinquencies or habitual mistakes of all its servants or employees, would be, under the circumstances, to establish a rule quite unreasonable in itself, and exceedingly difficult, if not impossible, under all circumstances, of any fair or just application.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur (BARTLETT, J., in result).

Judgment reversed.