DAVID SOLINGER, Appellant, *v.* EDWARD EARLE, impleaded, etc., Respondents.

The doctrine that where a debtor himself, or a near relative, out of compassion for him, pays money exacted by a creditor as a condition of his signing a composition, he may be regarded as having paid under duress, and is not equally criminal with the creditor, and so that he may recover it back, if sound (as to which *quære*), cannot be invoked in favor of one remotely related by marriage to the debtor; it can only be asserted in favor of the debtor himself, and the wife, husband or near relative of the blood of the debtor.

Plaintiff, who was a brother-in-law of N., of the firm of N. & Co., to induce the defendants, who were creditors of that firm, to unite with the other creditors in a composition of its debts, secretly agreed to and did give them his promissory note for a portion of their debt beyond the amount to be paid by the composition agreement. Defendants transferred the note before due to a *bona fide* holder, and plaintiff was compelled to pay. *Held*, that the agreement was a fraud upon the other creditors; that it was not divested of its fraudulent character by the fact that it was made, not by the debtor, but by a third person; and that an action was not maintainable to recover back the amount so paid.

*Smith* v. *Bromley* (2 Doug. 696), *Smith* v. *Cuff* (6 M. & S. 160), *Atkinson* v. *Denby* (7 H. & N. 934), distinguished and questioned.

(Argued September 30, 1880; decided November 9, 1880.)

APPEAL from judgment of the General Term of the Superior Court of the city and county of New York, in favor of defendant Earle, entered upon an order reversing a judgment in favor of plaintiff against said Earle, which was entered upon an order

overruling a demurrer to the complaint. (Reported below, 13 J. .& S. 80.)

The judgment of the General Term sustained the demurrer and dismissed the complaint.

The substance of the complaint is set forth in the opinion.

*Abram Kling* for appellant. The allegations in the complaint as to duress are sufficient to sustain the action. (*Smith* v. *Bromley,* 2 Doug. 696 ; *Cockshott* v. *Bennett,* 2 Term R. 763 ; *Middleton* v. *Anslow,* 1 P. Wms. 768 ; *Jackson* v. *Mitchel,* 13 Ves. Ch. 581 ; *Knight* v. *Hunt,* 5 Bing. 433 ; *Ex parte Sadler,* 15 Ves. 55 ; *Horton* v. *Rilley,* 11 Mees. & *Welsby,* 482.) The allegations as to the note being without consideration and its transfer to an innocent *bona fide* holder for value, and its compulsory payment by the plaintiff, are sufficient to sustain the action. (*Gilmour* v. *Thompson,* 49 How. 198 ; *Smith* v. *Cuff,* 6 Maule & Selwyn, 160 ; *Atkinson* v. *Derby,* 6 Hurl. & Norman, 778 ; *S. C.* 7 id. 934 ; *Haynes* v. *Rudd,* 17 Hun, 477 ; *Comstock* v. *Hier,* 73 N. Y. 269 ; *Beam* v. *Amsincke,* 8 N. B. R. 288 ; *Brokmire* v. *Rankins,* 7 id. 576 ; *Pinneo* v. *Higgins,* 12 Abb. 334 ; *Lawrence* v. *Clarke,* 36 N. Y. 128 ; *Buck* v. *Cole,* 4 Sandf. 79 ; *Williams* v. *Schreiber,* 14 Hun, 38 ; 1 Story's Eq., §§ 378–379 ; 14 Alb. L. J. 436 ; 15 id. 35.) The extortion of the note by the defendant, in addition to the amount mentioned in the composition agreement, was a fraud on the other creditors of the debtors Newman and Bernhard, and which authorized the recovery of the money so obtained. (*Breck* v. *Cole,* 4 Sandf. 79 ; *Lawrence* v. *Clark,* 36 N. Y. 128.) The fact that the note was given by defendant upon a secret agreement in fraud of a compromise entered into with the other creditors was not available as a defense, to defeat a recovery by the plaintiff, who stands upon the record as a *bona fide* purchaser of the note before maturity. (*Vallett* v. *Parker,* 6 Wend. 615 ; *Rockwell* v. *Charles,* 2 Hill, 500 ; *Dalrymple* v. *Hillebrand,* 62 N. Y. 5 ; *Gilmour* v. *Thompsom,* 49 How. 198 ; *Evertson* v. *Nat. Bank of Newport,* 66 N. Y. 14.)

*William M. Ivens* for respondents.    If the agreement was illegal, as being in fraud of creditors, plaintiff having entered into and performed it voluntarily, cannot now avail himself of the illegality to recover against the defendants. (*Nellis* v. *Clark*, 4 Hill, 429 ; *Burt* v. *Place*, 6 Cow. 431 ; *Schermerhorn* v. *Talman*, 14 N. Y. 141 ; *Saratoga Bank* v. *King*, 44 id. 87 ; *Knowlton* v. *Congress & Empire Co.*, 57 id. 529.)    The allegations of the complaint do not bring the plaintiff within the reason of the rule that coercion, compulsion or duress, will avoid a contract, or relieve a party from the plea *in pari delicto*. (*Foshay* v. *Ferguson*, 5 Hill, 154 ; *United States* v. *Huckabee*, 16 Wall. 431 ; Broome's Common Law, 609 ; 1 Parsons on Contracts, 392 ; 2 Kent's Com. 454 ; Holland's Jurisprudence, 73.)    They do not show such degree of compulsion as the law requires to be shown by the party seeking to avoid the natural legal consequences of his own acts upon the plea of their involuntariness. (*Radich* v. *Hutchins*, 5 Otto, 210 [95 U. S.] ; *Brown* v. *Pierce*, 7 Wall. 205 ; *Miller* v. *Miller*, 68 Penn. St. 493 ; *Foss* v. *Hildreth*, 92 Mass. 76 ; Chitty on Cont. 217 ; Story on Cont., § 514 ; *United States* v. *Huckabee, supra ; Lott* v. *Swezey*, 29 Barb. 87 ; *Feller* v. *Green*, 26 Mich. 70.) The nature of the menace complained of is not such as to entitle plaintiff to plead compulsion because of it. (Bouvier's Law Dict., "Duress ;" *Buffin* v. *Bignell*, 7 H. & N. ; *Wilcox* v. *Howland*, 23 Pick. 167 ; *Evans* v. *Gale*, 18 N. H. 397 ; *Kenworthy's Case*, Dec. Joint Com. 334 ; *Hall* v. *Shultz*, 4 Johns. 240.)    The relationship between plaintiff and Newman & Bernhard was not such as, taken in connection with the other facts alleged, would constitute compulsion or duress. (*Skeate* v. *Beale*, 11 Ad. & E. 983 ; *Glyn* v. *Thomas*, 11 Exch. 878, 879 ; 39 Am. Jurist, 26 ; Cro. Jac. 187 ; 1 Roll Abr. 687 ; Jacob's Law Dict., "Duress ;" 2 Danv. Abr. 686 ; *Bayley* v. *Clare*, 2 Brownl. 276 ; Bouvier's Law Dict., "Duress ;" *McClintock* v. *Cummins*, 3 McLean, 158 ; Bouvier's Law Dict. [3d ed.], tit. Brother-in-Law ; *Ennis* v. *Pentz*, 3 Bradf. 385 ; *Harvey* v. *Harvey*, 5 Beav. 134.)

ANDREWS, J. The complaint alleges in substance that the plaintiff, to induce the defendants to unite with the other creditors of Newman & Bernhard in a composition of the debts of that firm, made a secret bargain with them to give them his negotiable note for a portion of their debt, beyond the amount to be paid by the composition agreement. He gave his note pursuant to the bargain, and thereupon the defendants signed the composition. The defendants transferred the note before due to a *bona fide* holder, and the plaintiff having been compelled to pay it brings this action to recover the money paid. The complaint also alleges that the plaintiff was the brother-in-law of Newman, and entertained for him a natural love and affection, and was solicitous to aid him in effecting the compromise, and that the defendants knowing the facts, and taking an unfair advantage of their position, extorted the giving of the note as a condition of their becoming parties to the composition.

We think this action cannot be maintained. The agreement between the plaintiff and the defendants to secure to the latter payment of a part of their debt in excess of the ratable proportion payable under the composition, was a fraud upon the other creditors. The fact that the agreement to pay such excess was not made by the debtor, but by a third person, does not divest the transaction of its fraudulent character.

A composition agreement is an agreement as well between the creditors themselves, as between the creditors and their debtor. Each creditor agrees to receive the sum fixed by the agreement in full of his debt. The signing of the agreement by one creditor is often an inducement to the others to unite in it. If the composition provides for a *pro rata* payment to all the creditors, a secret agreement, by which a friend of the debtor undertakes to pay to one of the creditors more than his *pro rata* share, to induce him to unite in the composition, is as much a fraud upon the other creditors as if the agreement was directly between the debtor and such creditor. It violates the principle of equity, and the mutual confidence as between creditors, upon which the agreement is based, and diminishes the

motive of the creditor who is a party to the secret agreement, to act in view of the common interest, in making the composition. Fair dealing, and common honesty, condemn such a transaction. If the defendants here were plaintiffs seeking to enforce the note, it is clear that they could not recover. (*Cockshott* v. *Bennett*, 2 Term R. 763 ; *Leicester* v. *Rose*, 4 East, 372.) The illegality of the consideration upon well-settled principles would be a good defense. The plaintiff, although he was cognizant of the fraud, and an active participator in it, would nevertheless be allowed to allege the fraud to defeat the action, not, it is true, out of any tenderness for him, but because courts do not sit to give relief by way of enforcing illegal contracts, on the application of a party to the illegality. But if he had voluntarily paid the note, he could not, according to the general principle applicable to executed contracts void for illegality, have maintained an action to recover back the money paid. The same rule which would protect him in an action to enforce the note, protects the defendants in resisting an action to recover back the money paid upon it. (*Nellis* v. *Clark*, 4 Hill, 429.)

It is claimed that the general rule that a party to an illegal contract cannot recover back money paid upon it does not apply to the case of money paid by a debtor, or in his behalf, in pursuance of a secret agreement, exacted by a creditor in fraud of the composition, and the cases of *Smith* v. *Bromley* (2 Doug. 696), *Smith* v. *Cuff* (6 M. & S. 160) and *Atkinson* v. *Denby* (7 H. & N. 934) are relied upon to sustain this claim. In *Smith* v. *Bromley* the defendant, being the chief creditor of a bankrupt, took out a commission against him, but afterward finding no dividend likely to be made, refused to sign the certificate unless he was paid part of his debt, and the plaintiff, who was the bankrupt's sister, having paid the sum exacted, brought her action to recover back the money paid, and the action was sustained. Lord MANSFIELD in his judgment referred to the statute (5 Geo. 11, chap. 30, § 11), which avoids all contracts made to induce a creditor to sign the certificate of the bankrupt, and said: "The present is a

case of a transgression of a law made to prevent oppression, either on the bankrupt or his family, and the plaintiff is in the case of a person oppressed, from whom money has been extorted and advantage taken of her situation and concern for her brother." And again: "If any near relation is induced to pay the money for the bankrupt, it is taking an unfair advantage and torturing the compassion of his family." In *Howson* v. *Hancock* (8 Term R. 575) Lord KENYON said that *Smith* v. *Bromley* was decided on the ground that the money had been paid by a species of duress and oppression, and the parties were not in *pari delicto*, and this remark is fully sustained by reference to Lord MANSFIELD's judgment. *Smith* v. *Cuff*, was an action brought to recover money paid by the plaintiff to take up his note given to the defendant, for the balance of a debt owing by the plaintiff, which was exacted by the latter as a condition of his signing with the other creditors a composition. The defendant negotiated the note and the plaintiff was compelled to pay it. The plaintiff recovered. Lord ELLENBOROUGH said: "This is not a case of *par delictum ;* it is oppression on the one side and submission on the other; it never can be predicated as *par delictum* where one holds the rod and the other bows to it." *Atkinson* v. *Denby* was the case of money paid directly by the debtor to the creditor. The action was sustained on the authority of *Smith* v. *Bromley* and *Smith* v. *Cuff*.

It is somewhat difficult to understand how a debtor who simply pays his debt in full can be considered the victim of oppression or extortion because such payment is exacted by the creditor as a condition of his signing a compromise, or to see how both the debtor and creditor are not in *pari delicto.* (See remark of PARKE, B., in *Higgins* v. *Pitt*, 4 Exch. 312.) But the cases referred to go no further than to hold that the debtor himself, or a near relative who out of compassion for him pays money upon the exaction of the creditor, as a condition of his signing a composition, may be regarded as having paid under duress and as not equally criminal with the creditor.

These decisions cannot be upheld on the ground simply that

such payment is against public policy. Doubtless the rule declared in these cases tends to discourage fraudulent transactions of this kind, but this is no legal ground for allowing one wrong-doer to recover back money paid to another in pursuance of an agreement, illegal as against public policy. It was conceded by Lord MANSFIELD, in *Smith* v. *Bromley*, that when both parties are equally criminal against the general laws of public policy, the rule is *potior est conditio defendentis*, and Lord KENYON, in *Howson* v. *Hancock*, said that there is no case where money has been actually paid by one of two parties to the other upon an illegal contract both being *particeps criminis*, an action has been maintained to recover it back.

It is laid down in Cro. Jac. 187, that " a man shall not avoid his deed by duress of a stranger, for it hath been held that none shall avoid his own bond for the imprisonment or danger of any one than himself only." And in *Robinson* v. *Gould* (11 Cush. 57), the rule was applied where a surety sought to plead his own coercion as growing out of the fact that his principal was suffering illegal imprisonment as a defense to an action brought upon the obligation of the surety given to secure his principal's release. But the rule in Cro. Jac. has been modified so as to allow a father to plead the duress of a child, or a husband the duress of his wife, or a child the duress of the parent. ( *Wayne* v. *Sands*, 1 Freeman, 351 ; *Bayley* v. *Clare*, 2 Browne, 276 ; 1 Roll. Abr. 687 ; Jacob's Law Dic., " *Duress*.")

We see no ground upon which it can be held that the plaintiff in this case was not in *par delictum* in the transaction with the defendants. So far as the complaint shows he was a volunteer in entering into the fraudulent agreement. It is not even alleged that he acted at the request of the debtor. And in respect to the claim of duress, upon which *Smith* v. *Bromley* was decided, we are of opinion that the doctrine of that and the subsequent cases referred to can only be asserted in behalf of the debtor himself, or of a wife or husband, or near relative of the blood of the debtor, who intervenes in his be-

half, and that a person in the situation of the plaintiff, remotely related by marriage, with a debtor, who pays money to a creditor to induce him to sign a composition, cannot be deemed to have paid under duress, by reason simply of that relationship, or of the interest which he might naturally take in his relative's affairs.

The plaintiff cannot complain because the defendants negotiated the note, so as to shut out the defense, which he would have had to it in the hands of the defendants. The negotiation of the note was contemplated when it was given, as the words of negotiability show. It is possible that the plaintiff, while the note was held by the defendants, might have maintained an action to restrain the transfer, and to compel its cancellation. (*Jackson* v. *Mitchell*, 13 Ves. 581.) But it is unnecessary to determine that question in this case. The plaintiff having paid the note, although under the coercion resulting from the transfer, the law leaves him where the transaction has left him.

The judgment should be affirmed.

All concur.

Judgment affirmed.