N. E. 721. Here the plaintiff, with, it appears, knowledge of the law, and knowledge of the fact that its business was transacted within the state of Massachusetts, beyond the authority of the state of New York, paid the tax for fear that at some future time it might be prosecuted to recover the penalties incurred for not paying, and that such prosecution might be deferred until the aggregate of the penalties became very great, and that the court before whom such action was brought might render judgment against it for such accumulated penalties. I have been referred to no case, neither have I been able to find any, holding that a payment made in fear of a possible future action, and possible adverse decision of such action, constitutes such payment a coerced or involuntary payment. If the company intended to litigate the right of the defendant to exact the payment of the tax, it was bound to take that position, and resist the payment. Flower v. Lance, 59 N. Y. 603–610. The protest made at the time of payment did not affect the question of its being a voluntary or involuntary payment. "Where the payment is voluntary, * * * a protest, with notice of an intent to reclaim, is not sufficient to sustain a recovery. The voluntary character of the payment still remains, notwithstanding the notice, and is fatal to the action." United States Trust Co. v. Mayor, 77 Hun, 182–191, 28 N. Y. Supp. 344; Flower v. Lance, 59 N. Y. 610.

For these reasons, it seems to me that the payment to the defendant by the plaintiff was a voluntary payment, and cannot be reclaimed. It follows, therefore, that judgment must be rendered for the defendant upon the demurrer, and the complaint dismissed.

Judgment for defendant upon demurrer, and complaint dismissed.

---

(41 Misc. Rep. 526.)

### GLENS FALLS NAT. BANK v. VAN NOSTRAND.

(Supreme Court, Special Term, Warren County. October, 1903.)

**1. CONTRACTS—PUBLIC POLICY—UNLAWFUL GUARANTY.**

Where an insolvent firm procured a third person to guaranty a debt at a bank on an indorsement of a note, thereby inducing the bank to cancel the indorsement and sign a compromise agreement for its claim without the knowledge of the other creditors of the firm, the guaranty is void, as against public policy, though the composition failed because of the refusal of some of the other creditors to sign the agreement.

**2. SAME—RIGHTS OF PARTIES.**

An insolvent firm procured the guaranty of a debt due a bank as a secret preference in a proposed composition agreement, and in a suit thereon by the bank to enforce the guaranty and sell stock deposited as security therefor the guarantor in her answer demanded the return of the guaranty and the stock. *Held*, that the relief would be granted, the guaranty being an unlawful preference, and the bank having no right either to the guaranty or the collateral, the guarantor having no knowledge that the consideration was illegal when executed.

Action by the Glens Falls National Bank against Jane C. Van Nostrand. Judgment for defendant.

Louis M. Brown (Edgar T. Brackett, of counsel), for plaintiff.
William Ives Washburn, for defendant.

SPENCER, J. In May, 1901, the firm of Samuel D. Davis & Co., bankers, issued a circular letter to their creditors, by which it appeared that their liabilities exceeded their assets by $1,324,012.87. It contained a proposition to compromise their debts at 10 cents on the dollar, conditioned upon its acceptance by all their creditors. They owed the plaintiff $54,750. A part of this debt consisted of a past due protested promissory note made by the Railroad Equipment Company, indorsed by Samuel D. Davis & Co., and upon which there remained unpaid the sum of $7,750. A large number of the creditors signed the composition agreement, but the plaintiff declined to do so. Thereupon Samuel D. Davis & Co., in order to induce the plaintiff to join the composition, agreed with the plaintiff that, if the latter would cancel the firm's indorsement upon the note of the Railroad Equipment Company, and sign the composition as to the remainder of its claim, they would obtain from the defendant her agreement to guaranty the payment of said Railroad Equipment Company's note. The plaintiff accepted this offer, and thereupon canceled the indorsement of Samuel D. Davis & Co. upon the Railroad Equipment Company's note, signed the composition agreement as to the balance of its claim, and received from Samuel D. Davis & Co. the following paper, signed by the defendant, to wit:

"In consideration of the Glens Falls National Bank, erasing and canceling the indorsement of Samuel D. Davis & Co. on 'a promissory note, owned by said bank, made by the Railroad Equipment Co. for twenty thousand dollars ($20,000), payable to the order of Post & Pomeroy, and indorsed by them, and also by said Samuel D. Davis & Co.; and also in consideration of the sum of one dollar to me in hand paid by said bank, the receipt whereof is hereby admitted, I, Jane C. Van Nostrand, guarantee the payment to said bank of the balance, both principal and interest, owing and unpaid on said promissory note within one year from the date hereof; and I also turn over to said bank two hundred (200) shares of the capital stock of the White Knob Copper Company, Limited, as collateral security for the performance of this guarantee, represented by certificates Nos. A.555 and A.1759, 100 shares each.                    [Signed]      Jane C. Van Nostrand."

This transaction was not made known to the other creditors. Samuel D. Davis & Co. failed to procure the acceptance of their offer of compromise by all their creditors, and the composition, for that reason, never went into effect. The plaintiff brings this action against the defendant upon the agreement executed by her, asking for a sale of the stock deposited, the application of the proceeds to the payment of the note, and judgment for deficiency. The defendant resists, claiming: First, that she delivered the agreement upon the condition that it was to be returned to her in case the composition failed; and, second, that the agreement is illegal, it having been delivered and received by the plaintiff as a secret preference to induce the plaintiff to sign the composition.

I think the testimony fails to support the defendant's contention that she delivered the agreement conditionally, and the second defense is the only one that remains. The taking of a secret preference by a creditor joining in a composition agreement does not nullify the composition. The debtor and the preferred creditor both remain bound by its terms. Nonpreferred creditors may rescind if

the secret agreement for preference has been executed, but so long
as such agreement remains executory it is unenforceable because
of its illegality, and cannot be employed for any purpose. This is,
in substance, the decision of the Court of Appeals in the case of
Hanover Nat. Bank v. Blake, 142 N. Y. 404, 37 N. E. 519, 27 L.
R. A. 33, 40 Am. St. Rep. 607, and must be regarded as the settled
law of the land. In most of the cases where this question has been
discussed the agreements have been between the debtor and cred-
itor alone. In such cases the agreements are held void on the
ground that they are fraudulent as to the other creditors of the debt-
ors. Breck v. Cole, 4 Sandf. 79; Russell v. Rogers, 10 Wend. 473,
25 Am. Dec. 574; Fellows v. Stevens, 24 Wend. 294; Bliss v. Matte-
son, 45 N. Y. 22; Adams v. Outhouse, Id. 318. This rule has also
been applied where the consideration for the preference has been
furnished by third parties, either with or without the knowledge
and concurrence of the debtor. Thus, in Pinneo v. Higgins, 12 Abb.
Prac. 334, the plaintiff, one of the creditors of an insolvent firm, put
off signing the composition agreement until all the other creditors
had signed, and thereupon refused unless the defendant—a third
party—indorsed the debtor's notes given in pursuance of the com-
position. In an action upon the indorsement it was held that the
agreement was fraudulent, and that the plaintiff could not recover.
Also, in Babcock v. Dill, 43 Barb. 577, an insolvent debtor effected
a composition with his creditors. The defendant, without his knowl-
edge, gave his own note to one of the creditors, to induce the latter
to sign the composition. The note was held to be fraudulent and
void.

But in the more recent decisions, especially in the Court of Ap-
peals, where this subject has been considered, the court has not
put its decisions solely upon the ground of fraud, but has regarded
the contracts as against public policy, and refused to lend its as-
sistance to their enforcement. Thus, in Solinger v. Earle, 82 N. Y.
393, the preference took the form of a negotiable note made by a
third party. It was, however, transferred before it became due,
and the maker was compelled to pay. He thereupon brought suit
against the preferred creditor to recover back the amount so paid.
It was held that the action could not be maintained, on the ground
that the plaintiff was a party to the illegal transaction, and, having
voluntarily paid the note, could not, according to the general prin-
ciples applicable to executed contracts void for illegality, maintain
an action to recover back the money paid. In this connection, An-
drews, J., speaking for the court, says:

"If the defendants here were plaintiffs seeking to enforce the note, it is
clear they could not recover. The illegality of the consideration upon well-
settled principles would be a good defense. The plaintiff, although he was
cognizant of the fraud, and an active participator in it, would, nevertheless,
be allowed to allege the fraud to defeat the action, not, it is true, out of any
tenderness for him, but because courts do not sit to give relief by way of
enforcing illegal contracts on the application of a party to the illegality."

In the case of White v. Kuntz, 107 N. Y. 518, 14 N. E. 423, 1 Am.
St. Rep. 886, the plaintiff was the preferred creditor seeking to en-

force an agreement made by a third party to purchase the notes taken by the plaintiff upon the terms of the composition, and which agreement was made to induce the plaintiff to enter into the composition. It was there held that the plaintiff could not recover; Judge Earl, speaking for the court, saying:

"The plaintiff, upon familiar principles, could not come into court and ask to have the agreement canceled. That agreement was fraudulent and void, and the parties thereto were in pari delicto, and the courts would not aid either of them to enforce or cancel it."

In Almon v. Hamilton, 100 N. Y. 527, 3 N. E. 580, Judge Andrews, in speaking of secret preferences, says:

"A party to a composition between a debtor and his creditors, or who assents thereto, is not permitted to make a secret reservation of a part of his claim from the operation of the compromise, or stipulate for a secret advantage over the other creditors. The law exacts of all the parties to a composition the most scrupulous good faith. It enforces a wholesome morality, and inculcates the principles of honest and fair dealing, by defeating any advantage attempted to be gained either by working upon the necessities of the debtor or by colluding with him. It will not permit a part of debt withheld from the arrangement to be enforced, and it will compel the cancellation of securities received in violation of the principle of equality. The doctrine is based upon public policy and the principles of commercial honor, and we should be very unwilling to weaken it by nice distinctions."

We need not search further for the rule that should be applied to the case at bar. The testimony raises no doubt in my mind but that the agreement for the cancellation of the indorsement of Samuel D. Davis & Co. upon the Railroad Equipment Company note and the substitution of the defendant's agreement in its place was a secret agreement between the plaintiff and Samuel D. Davis & Co. It was not divulged. Failure to communicate a fact which another is entitled to know is a suppression, especially when the one who fails to publish obtains an advantage by so doing. Whether the negligence of the plaintiff, in its acceptance of the composition, to correctly describe its claim, was accidental or intentional, need not be decided. In either event such description was misleading to the other creditors, and the plaintiff must be held responsible for that description. The circular letter stated that the plaintiff's claim amounted to $51,625, whereas the plaintiff's acceptance represented the aggregate of its claim which it subjected to the composition agreement at the sum of $64,075; thereby indicating, not that it had withheld a part of its claims mentioned in the circular letter from the terms of the composition, but indicating that it had included therein claims in addition to those described in the circular letter. Neither can there be any doubt from the testimony but that it was the additional security, believed to have been secured by reason of the defendant's guaranty, which induced the plaintiff to join the composition. A preference was at all times insisted upon by the plaintiff. The only difficulty which the parties seemed to encounter was in regard to the form such preference should take.

The contention of the plaintiff that, inasmuch as the composition agreement was never consummated, no fraud was in fact perpetrated upon any one, is a bold proposition; but, whether sound

or otherwise, has no application here. As we have seen, an agreement for a secret preference does not nullify the composition to which it is related. They are treated as separate and independent transactions. Hanover Nat. Bank v. Blake, 142 N. Y. 404, 37 N. E. 519, 27 L. R. A. 33, 40 Am. St. Rep. 607. The invalidity of one does not affect the validity of the other. A valid and binding composition is not essential to render invalid an agreement for a preference. The invalidity of the secret preference springs from the character of the transaction itself—a transaction in violation of commercial integrity and ordinary business morality. It is a kind of overreaching which honesty and fair dealing condemn.

The plaintiff's further contention that the defendant's agreement was not to guaranty the debt or obligation of the insolvent debtor, but to guaranty the debt of a third party, to wit, the Railroad Equipment Company, is specious. I cannot see how such fact changes in any way the actual thing sought to be accomplished, to wit, a preference to the plaintiff. The bane of the transaction lies in the giving of the preference without the knowledge or consent of the other creditors; and when that exists, whatever may be its form, it renders the agreement for preference illegal and void.

The argument by plaintiff that it did not withhold any part of its claim from the composition, but in fact subjected it all thereto, because the Samuel D. Davis & Co. indorsement on the Railroad Equipment Company note was canceled when it signed the composition, is sophistical to the last degree. They were parts of the same transaction. The distinction attempted is artful, but altogether too fine for practical purposes. It magnifies the form and destroys the essence of the deed.

The conclusion at which I have arrived on this branch of the case is that the plaintiff received and still holds the defendant's agreement and stock in pursuance of an agreement between it and Samuel D. Davis & Co., which agreement was and is void as against public policy, and that the court should deny its aid to the plaintiff in its effort to enforce the defendant's agreement for a sale of the stock and for a judgment for deficiency against her.

The defendant, by her answer, demands judgment for a return of her agreement and the stock pledged as security therefor. Should the court grant her relief? As before stated, the testimony fails to support her claim that the agreement and stock were delivered upon the condition that the composition went through. Neither is there any evidence to support the contention that the agreement and stock were obtained from her by duress, within the English rule of Smith v. Bromley, as limited in Solinger v. Earle, 82 N. Y. 393. But it cannot be said, as in the case last referred to, that she was a party to the illegal transaction. She has not done anything from which she may be regarded as in pari delicto in the transaction between the plaintiff and Samuel D. Davis & Co. Apart from the secret agreement for preference between plaintiff and Samuel D. Davis & Co., her agreement was a proper and legal one. There is no evidence from which it can be found or inferred that she had notice that her

agreement and stock were to form the consideration of an illegal transaction. By means of that transaction the plaintiff acquired no title to her stock, or any enforceable rights under her agreement. Why, then, should she not be entitled to a return of such agreement and stock? I can find no reason for denying the aid of the court in accomplishing that result.

Let findings be prepared in accordance with the views herein expressed, and judgment entered for the defendant dismissing the complaint, and for a return of the defendant's guaranty agreement, together with the stock delivered as collateral thereto, with costs of the action.

Judgment accordingly.