covered evidence been then before the court, and that justice requires that a new trial be had, upon which the case can be disposed of upon all the evidence.

[2] The fact that the motion for a new trial is the third made by the defendants should not of itself defeat the motion, where substantial justice requires a new trial. Particularly is this so where, as in this case, the first motion was withdrawn, and the second decided without the court having before it all the material evidence now produced.

The order granting a new trial should be affirmed, with costs. All concur, except HOWARD, J., who dissents.

<hr>

(165 App. Div. 548)

CATSKILL NAT. BANK v. LASHER et al.

(Supreme Court, Appellate Division, Third Department. January 6, 1915.)

1. APPEAL AND ERROR (§ 1071*)—REVIEW—HARMLESS ERROR.
Where both parties moved for a directed verdict, thereby submitting to the court all questions of law and fact, the failure of the court to sign findings of fact and law, while erroneous, does not necessitate a reversal, where the conclusions to be drawn from the evidence are clear, for Code Civ. Proc. § 1317, provides for the disregarding of technical errors not affecting substantial rights.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4234–4239; Dec. Dig. § 1071.*]

2. GUARANTY (§ 16*)—CONSIDERATION.
Where the maker of a note forged indorsements, the payee, upon discovering the forgery, could disregard the note and immediately sue for moneys had and received; hence, as the payee, by taking a guaranty of the genuineness of the indorsements, waived that right, the guaranty executed by the indorsers was supported by a valid consideration.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 14–17; Dec. Dig. § 16.*]

3. BANKS AND BANKING (§ 118*)—LIABILITY OF BANK FOR ACT OF CASHIER.
Where the cashier of a bank, which was the payee of a note on which indorsements had been forged, induced the indorsers to guarantee their indorsements on threat of prosecuting the maker, the bank will be presumed to have assented to his acts.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1726–1738; Dec. Dig. § 118.*]

4. CONTRACTS (§ 128*)—COMPOUNDING OFFENSES—VALIDITY.
As Penal Law (Consol. Laws, c. 40) § 570, makes it a crime to agree not to prosecute for a felony, a guaranty of the genuineness of forged indorsements, in consideration of an agreement not to prosecute the forger, is unenforceable.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 633–653; Dec. Dig. § 128.*]

5. ESTOPPEL (§ 58*)—EQUITABLE ESTOPPEL.
The maker of a note, after forging indorsements, negotiated it to a bank. The bank discovered the forgeries, and induced the indorsers to guarantee their indorsements under threat of prosecuting the maker. The bank did not immediately sue the maker, but waited until the note became due. *Held,* that as the bank knew of the forgeries, and did not rely on the representations of the indorsers as to the validity of their indorsements,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the indorsers were not estopped to set up the forgeries; their guaranty being void, because the consideration of a contract to compound a felony.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 144, 145; Dec. Dig. § 58.*]

Kellogg, J., dissenting.

Appeal from Trial Term, Greene County.

Action by the Catskill National Bank against Herbert W. Lasher and another. From a judgment for defendants (84 Misc. Rep. 523, 147 N. Y. Supp. 641) plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

J. Stewart Ross, of Brooklyn, for appellant.

Visscher, Whalen & Austin, of Albany (H. Leroy Austin, of Albany, of counsel), for respondents.

SMITH, P. J.   Prior to August 24, 1909, one W. Platt Fisher presented to the plaintiff bank two promissory notes, purporting to be indorsed by Herbert W. Lasher and Nelson P. Lasher, who are the defendants in this action. One of these notes was for $100 and interest, dated May 25, 1909, payable in four months. The other note was dated August 9, 1909, payable in four months, with interest, and for the sum of $150. The plaintiff discounted the said notes, paying the proceeds thereof to W. Platt Fisher.

Upon the 24th of August, 1909, the plaintiff's cashier, P. Gardner Coffin, became suspicious of the genuineness of the signature of Nelson P. Lasher upon these notes. Nelson P. Lasher was the father of Herbert W. Lasher and the father-in-law of W. Platt Fisher. Upon that day Coffin went to Nelson P. Lasher and Herbert W. Lasher, and learned that their signatures upon the said notes were forgeries. Coffin thereupon told them that he would be out to see them that evening "in shape to do business." Thereafter and upon the same day he swore to an information for the arrest of W. Platt Fisher. A warrant was procured and placed in the hands of a constable. That night he went to the residence of the defendants, taking the constable with him, who, however, left the conveyance just before they arrived at the defendants' residence. The defendants, however, knew that he was there. Coffin thereupon wrote upon the back of the notes the following memorandum:

"We severally and jointly guarantee the indorsements on the within note to be correct, and jointly and severally guarantee the payment of the same when due."

This he procured to be signed by the defendants, and thereupon returned to Catskill, taking the constable with him, not having served the warrant. There is evidence to the effect that when Coffin procured the warrant he stated that he probably would not need it, as the matter probably would be settled. There is further evidence that after he returned from Catskill, and upon the next day, he returned the warrant to the justice of the peace who issued the same, saying that the matter had been settled, and the warrant and information were

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

thereupon destroyed. When the notes became due they were duly protested, and this action is brought to recover thereupon.

[1] At the close of the evidence, both parties moved for a directed verdict. This submitted to the court the questions both of law and of fact, and thereafter an order was entered dismissing plaintiff's complaint. No decision, however, except the said order, was ever made by the judge, and no findings of fact and law were ever signed by him. By strict practice this case should be sent back to the Special Term judge for findings of fact and law, upon which this judgment can stand. But with the power given to us under section 1317 of the Code of Civil Procedure, inasmuch as the conclusions to be drawn from the evidence are clear, and a jury has in fact been waived, this court may find the necessary facts either to sustain or to reverse the judgment entered.

[2] The learned trial court dismissed the complaint upon the ground that there was no consideration for the defendants' promise. This we think was error. If these signatures were in fact forged, as is assumed throughout the case, the bank at the time of the discovery had at once the right to disregard the notes and to sue W. Platt Fisher for moneys had and received. After taking from these sureties their guaranty of the genuineness of the indorsement and their guaranty of the payment of the notes when due, this right was suspended, and the bank had no authority to demand payment thereof from the principal until the due date of the notes. This extension of time was in law a sufficient consideration for the defendants' promise.

[3-5] It seems to me clear, however, upon the facts of the case, that this contract was made for the purpose of compounding a felony. It is clear that Coffin understood that these signatures were forged. He had gone so far as to swear to an information, upon which a warrant was issued against Fisher for the forging of the signatures. It is nowhere claimed that they were genuine, and is assumed throughout the case that they were wrongfully put upon the note by Fisher. The defendants were warned that Coffin would come to their house that night "prepared to do business." He came there with a constable, armed with a warrant for Fisher's arrest. This guaranty was signed by the defendants, relatives of Fisher, for the purpose of saving the son-in-law and brother-in-law from arrest. That such was their purpose is clearly evidenced by the facts in the case, and was known to Coffin at the time that he took their guaranty. Knowing that it was so understood and intended by the defendants, the bank, as represented by Coffin, will be deemed to have assented thereto. So that, if the contract had been lawful, Coffin would have been bound to refrain from prosecution of Fisher for his crime. The agreement not to prosecute for a felony constitutes a crime, within section 570 of the Penal Law, and it is unnecessary to cite authorities to the effect that a contract made in violation of positive law gives no right of action for its enforcement.

The burden of the plaintiff's contention rests upon the claim that the defendants are estopped from denying the validity of their in-

dorsements upon these original notes, and the action is brought upon those original notes.. Plaintiff rests largely upon the case of Rothschild v. Title Guarantee & Trust Co., 204 N. Y. 458, 97 N. E. 879, 41 L. R. A. (N. S.) 740. I am unable to find, however, in this transaction any elements of an equitable estoppel. There was no representation that these indorsements were originally genuine, and, if there were, there was no reliance upon any such representation by Coffin, who knew the fact that they were not genuine. The plaintiff has been in no way misled to its prejudice, and failure to prosecute and demand payment is based solely on its reliance upon this new guaranty contract, which is invalid because tainted with crime. In the case cited, upon which reliance is placed, the plaintiff, who sought to have canceled a mortgage, made payments upon a mortgage upon which her signature had been forged, but of which fact the defendants had no knowledge, so that the defendants took no steps for the collection of said mortgage, relying upon the validity of the instrument, which was thus asserted by the plaintiff in making payment thereupon. In that case the defendant was misled, and it was held so far to his prejudice as to create an equitable estoppel as against the plaintiff. As stated before, however, this element is wholly lacking in the case at bar.

The judgment should therefore be affirmed, and this court should find as a fact that the memorandum of guaranty, which is the only evidence of defendants' liability, was made in consideration of the implied promise by Mr. Coffin, acting for the bank, not to prosecute W. Platt Fisher for the crime of forgery. All concur, except KELLOGG, J., who dissents.