UNION EXCHANGE NATIONAL BANK OF NEW YORK, Appellant, *v.* SAMUEL L. JOSEPH, Respondent.

First Department, December 17, 1920.

**Bills and notes — action to recover balance due on promisory note — answer — allegations which show that notes were given under duress and to induce plaintiff to refrain from criminally prosecuting defendant's brother-in-law — counterclaim seeking to recover moneys paid on note — demurrer sustained.**

An answer in an action to recover a balance due on certain promissory notes brought against the maker, which alleges as a defense that the notes were given to the plaintiff, a bank, in order to induce it to refrain from criminally prosecuting the defendant's brother-in-law for appropriating the plaintiff's funds, and in no way alleges the innocence of the defendant's relative, and which relies only upon the alleged duress, and which further and upon the same grounds counterclaims for the moneys paid by the defendant on said notes, does not state facts sufficient to sustain the counterclaim, and a demurrer thereto should be sustained.

PAGE and DOWLING, JJ., dissent, with opinion.

APPEAL by the plaintiff, Union Exchange National Bank of New York, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 25th day of March, 1920, overruling the plaintiff's demurrer to the counterclaim contained in the defendant's answer.

*Everett B. Heymann* of counsel [*Jacob Schnebel* with him on the brief], for the appellant.

*Achilles H. Kohn* of counsel [*Wollman & Wollman*, attorneys], for the respondent.

SMITH, J.:

The action is brought to recover $1,325, the balance due upon certain promissory notes aggregating $6,499.18, which were executed by the defendant and upon which payments have been made, so that the balance due is the sum sued for. The answer, after containing some denials, sets up as a first defense that prior to the execution of the notes sued upon the husband of the defendant's sister, one J. L. Bloch, was adjudged a bankrupt; that upon the day after the petition in bankruptcy was filed the plaintiff, through its officers, accused Bloch of

having criminally appropriated funds of the bank and threatened to arrest the said Bloch and send him to the penitentiary unless the defendant would execute his notes for $6,499.18. It further alleges that this defendant, believing that the plaintiff would carry out said threats, did sign the said notes in order to save the said Bloch from the infamy of arrest and imprisonment and to save the defendant's sister from the shame and mortification of the arrest of her husband and from the loss of her sole support which his imprisonment would entail, and further alleges that the signing of said notes was not the voluntary act of this defendant, who was an absolute stranger to the transaction, and was made solely by reason of the plaintiff's threats and because of the duress, undue influence and compulsion which the plaintiff exercised to force the defendant so to promise. The answer then states as a counterclaim against the plaintiff the same facts alleged in this defense and asks that by reason of such payment so made under undue influence, duress and compulsion the defendant recover of the plaintiff the moneys theretofore paid upon said notes, to wit, the sum of $5,174.18.

The plaintiff has not demurred to the defense, but has demurred to the counterclaim upon the ground that said counterclaim does not state facts sufficient to constitute a cause of action.

It will be noted that nowhere in the defendant's pleading is found any allegation that Bloch was innocent of the crime charged against him and the fair and only inference which can be drawn from the allegations of the answer is that these moneys were paid to induce the plaintiff to forego the criminal prosecution of the said Bloch which would result in his arrest and imprisonment. These moneys were paid, therefore, for the purpose of compounding a felony and authorities are not necessary to the proposition that moneys so paid cannot be recovered. In *Catskill National Bank v. Lasher, No. 1* (165 App. Div. 548; affd., 221 N. Y. 551) it was held that an obligation under the threat of arrest of a relative was invalid, although that threat was merely implied and although there was no proof that the relative was guilty of a crime. In *Haynes v. Rudd* (102 N. Y. 372) it was held that in an action to recover back moneys paid by plaintiff in payment of a promissory note given

by him to the defendant where the note was given to compound " a supposed felony," it could not be recovered back. The opinion in part reads: " While fraud, duress and undue influence employed in procuring a contract for the payment of money may vitiate and destroy the obligation created, and render it of no effect, and the party who has been compelled to pay money on account thereof may maintain an action to recover the same, such a right does not exist and cannot be enforced where the consideration of the contract, thus made, arises entirely upon or is in any way affected by the compounding of a felony. When this element enters into the contract, it becomes tainted with a corrupt consideration and cannot be enforced. The correctness of this rule was recognized by the trial judge in his charge to the jury. He charged, among other things, as follows: ' Was the note a legal contract or an illegal contract? It was an illegal contract and void between the parties if it was given upon an agreement to suppress the evidence of a crime *alleged to* have been committed equally as if it were given upon an agreement to suppress the evidence or refrain from prosecuting a crime which had been in fact committed.' He also charged, ' If he impressed upon the plaintiff the idea that he would thus refrain and would conceal the crime if he would give the note, but that he would not refrain if he did not give the note, it was an illegal contract.' He further charged upon being requested that if the note was given simply to compound a felony, the plaintiff could not recover. So far the charge of the judge was entirely correct, and the case was properly presented to the jury in this respect."

It is claimed on behalf of the plaintiff that duress cannot be predicated upon a threat to imprison the defendant's brother-in-law. In my judgment, however, it is not necessary to determine this question.

The order should, therefore, be reversed, with ten dollars costs and disbursements, and the demurrer sustained, with ten dollars costs.

CLARKE, P. J., concurs; DOWLING and PAGE, JJ., dissent.

GREENBAUM, J.:

Before discussing defendant's plea of duress, it should be noted that there is incorporated in the counterclaim by refer-

ence to the allegations set up in a separate defense, in addition to what has been mentioned in the opinions of my learned associates, the following allegations: " and that the payment of the said note would enable the plaintiff bank to obtain a secret advantage over the other creditors (who accepted composition) of the said bankrupt and for this reason too, said note is unenforcible and invalid." '

Of course, if defendant establish upon the trial that the plaintiff signed a composition agreement and that the notes in suit were given in pursuance of a secret understanding between the parties, whereby the plaintiff would secure an advantage over other creditors who joined in the composition, such an understanding would operate as a fraud upon such creditors, with the result that plaintiff would not be permitted to recover upon the note upon which this action is brought and the defendant would not be permitted to recover back the proceeds of the note which have heretofore been paid. In other words, the illegal consideration which taints the notes prevents a recovery by the payee on unpaid notes and by the maker of the proceeds of any notes which had been paid. Neither party will be permitted affirmatively to assert a claim against the other.

It follows that if the secret agreement were the sole issue between the parties, the defense would be good and the counterclaim bad.

The defendant, however, alleges more than an illegal secret agreement. He alleges that his will was " constrained " when he signed the notes and that his act was not voluntary, but done to save his brother-in-law " from the infamy of arrest and imprisonment," which the plaintiff threatened unless he " would execute his notes for said $6,499.19 " and " to save " his " sister from the shame and mortification of the arrest of her husband, and from the loss of her sole support, which his imprisonment would entail."

The claim of defendant is that the notes were signed under duress. Numerous cases are cited in support of this plea. An examination of them shows that some of them were actions in equity to set aside conveyances, mortgages or other securities in which duress was not fundamentally considered by the court, but in which the element of fraud existed, as where false claims were asserted by the creditors or an imposition

practiced by them, or where other facts existed justifying a court of equity to set aside a voidable contract.

In *Adams* v. *Irving National Bank* (116 N. Y. 606) the wife of a bankrupt who was charged by the defendant bank with having misappropriated its funds made a settlement with the defendant in order to prevent her husband's arrest. She subsequently brought an action to recover back moneys paid to the defendant pursuant to the terms of the settlement, alleging that the payment to the bank " was not the free, unconstrained and voluntary act of the plaintiff, but was induced by the fear of her husband's arrest on the eve of their departure for Europe and the effect such an act might have upon his health at that time, shattered and feeble from the misfortune that had overtaken him."

Said the court at page 611: " It is not an accurate use of language to apply the term duress to the facts upon which the plaintiff seeks to recover. The case falls rather within the equitable principle which renders voidable contracts obtained by undue influence. However we may classify the case, the rule is firmly established that in relation to husband and wife, or parent and child, each may avoid a contract induced and obtained by threats of imprisonment of the other, and it is of no consequence whether the threat is of a lawful or unlawful imprisonment."

The rule which the court stated as " firmly established " was fully discussed in *Solinger* v. *Earle* (82 N. Y. 393) which was cited in the opinion in the *Adams* case. It is there shown that the rule originated in the English courts which allowed " a father to plead the duress of a child, or a husband the duress of his wife, or a child the duress of the parent," and the court then stated: " We are of opinion that the doctrine of that [referring to *Smith* v. *Bromley*, 2 Doug. 696] and the subsequent cases referred to can only be asserted in behalf of the debtor himself, or of a wife or husband, or near relative of the blood of the debtor, who intervenes in his behalf, and that a person in the situation of the plaintiff [a brother-in-law] remotely related by marriage, with a debtor, who pays money to a creditor to induce him to sign a composition, cannot be deemed to have paid under duress, by reason simply of that relationship, or of the interest which he might naturally take in his relative's affairs."

It is true that in the *Solinger* case it does not appear that any threats to imprison the debtor had been made, but the court was discussing the broad question of duress in which a near relative of a debtor may plead duress.

The case at bar is quite analogous to the situation in the *Solinger* case, in view of the element of a composition coupled with a secret agreement to give an advantage to plaintiff in fraud of the rights of other creditors which appear in that and in this case and in view of the opinion of the Court of Appeals in the *Adams Case* (*supra*) that the allegation as to threats made to the debtor's wife was not sufficient to establish duress. It, therefore, seems to me that we may not ignore the opinion of the Court of Appeals in *Solinger* v. *Earle* (*supra*) in which it expresses the law of this State, that a brother-in-law is not in a position to avail himself of the plea of duress upon the state of facts which are set forth in the counterclaim.

Moreover, in my opinion the plea of duress which has been made available to third parties who are directly and immediately personally affected by the distress of the debtor in consequence of their intimate and close relationship to him, and of the reciprocal obligations and duties, whether legal or moral, subsisting between them, should be strictly confined to a near blood relationship. To make it available to a brother-in-law, who is only indirectly interested in the debtor by reason of the fact that his sister is directly affected by her husband's calamities, is straining the rule beyond reasonable imitations.

Assuming, therefore, all the facts alleged in the counterclaim, I am of the opinion that they are insufficient to warrant a recovery, and that the order appealed from should be reversed and plaintiff's motion granted.

PAGE, J. (dissenting):

The action is upon a promissory note given to the plaintiff by the defendant. The answer sets up a plea of duress, and the following allegations are incorporated by reference in the counterclaim: " * * * The plaintiff through its duly qualified officers, did coerce, force and by duress and undue influence compel the defendant to execute to the said plaintiff his notes aggregating about $6,499.18, in that the plaintiff bank did then and there inform the defendant that J. L.

Bloch, the husband of defendant's sister, was guilty of having criminally appropriated funds of the bank and plaintiff bank threatened to arrest the said Bloch and to send him to the penitentiary, unless the defendant would execute his notes for said $6,499.18; that this defendant, believing that the plaintiff would carry out the said threats, did sign the notes for said sum to the plaintiff in order to save said Bloch from the infamy of arrest and imprisonment, and to save the defendant's sister from the shame and mortification of the arrest of her husband, and from the loss of her sole support, which his imprisonment would entail.   *   *   *   That the making of the said notes aggregating $6,499.18 was not the voluntary act of this defendant and that the threats of the plaintiff to arrest and imprison the husband of defendant's sister constrained the will of the defendant and thereby induced him to affix his signature to said notes.   That defendant was an absolute stranger to the transactions out of which the alleged indebtedness of $6,499.18 arose; and promised the plaintiff to pay the said sum solely in consequence of the plaintiff's threats and because of the duress, undue influence and compulsion which the plaintiff exercised to force this defendant to so promise."

The counterclaim continues: "That this defendant by reason of the undue influence, duress and compulsion resulting from the said threats and the said conduct of the said plaintiff bank, has paid to the said plaintiff all of the said $6,499.18 except $1,325.00.   Wherefore the defendant demands judgment against plaintiff bank in the sum of $5,174.18, together with the costs of this action."

The plaintiff demurred to the counterclaim for insufficiency. The appellant in support of the demurrer claims that an action to recover money paid under duress of threat can only be maintained by the person against whom the threat is directed, or by a person related to him as a husband and wife, parent or child, or other close blood relationship.   At common law the only person that could maintain such an action or interpose the duress as a defense was the person whose liberty or safety was threatened.   The courts have, however, continuously extended the exceptions to this common-law right; first to a husband or wife; then to parent or child; then to brother or sister.   There is no case in this State that I

First Department, December, 1920.    [Vol. 194.

have been able to discover further extending the exceptions, nor do I find any case where the question was directly involved, denying the right to others besides those above mentioned.

In the case of *Solinger* v. *Earle* (82 N. Y. 393), relied upon by Mr. Justice Greenbaum as definitely limiting the exceptions to those above mentioned, it is to be noted that whatever was said by the court on the subject of the persons who could maintain an action to recover money paid under duress is by way of argument and not any part of the principles governing the decision of the case. There was no question of duress in the case, as the court said (p. 399): " So far as the complaint shows he was a volunteer in entering into the fraudulent agreement. It is not even alleged that he acted at the request of the debtor. And in respect to the claim of duress, upon which *Smith* v. *Bromley* was decided, we are of opinion that the doctrine of that and the subsequent cases referred to can only be asserted in behalf of the debtor himself, or of a wife or husband, or near relative of the blood of the debtor, who intervenes in his behalf, and that a person in the situation of the plaintiff, remotely related by marriage, with a debtor, who pays money to a creditor to induce him to sign a composition, *cannot be deemed to have paid under duress, by reason simply of that relationship,* or of the interest which he might naturally take in his relative's affairs." (Italics are mine.) Historically and argumentatively this statement was entirely accurate; the cases cited were early English cases, with the exception of one early Massachusetts case, and the court held merely that in the absence of threat or other duress, the plaintiff's claim could not be based simply upon relationship. This certainly cannot be considered an authoritative decision that where the other elements of duress are present, a brother-in-law of the person against whom the threats were directed could not avail himself thereof either by way of defense, or of affirmative action.

In other jurisdictions, however, the exceptions have been extended to grandmother and grandson (*Bradley* v. *Irish,* 42 Ill. App. 85); granddaughter and grandfather (*Kirby* v. *Arnold,* [Ala. 1915] 68 So. Rep. 17); sister and brother (*Schultz* v. *Catlin,* 78 Wis. 611); aunt and nephew (*Town of Sharon* v. *Gager,* 46 Conn. 189); uncle and nephew (*Seear* v. *Cohen,* 45 L. T. [N. S.]

589); father-in-law and son-in-law (*Nebraska Mutual Bond Assn.* v. *Klee,* 70 Neb. 383); mother-in-law and son-in-law (*Fountain* v. *Bigham,* 235 Penn. St. 35); and friends (*Davies* v. *London & P. Marine Ins. Co.,* L. R. 8 Ch. Div. 469). This latter case shows how much the English courts have extended the exceptions beyond the cases cited in *Solinger* v. *Earle* (*supra*). The modern rule to which, in my opinion, we should give effect, therefore, would not seem to rest upon the closeness of relationship, but upon the fact whether considering the surrounding circumstances such as age, sex, capacity, situation and relation of the parties, the threat is sufficient to overcome the mind of a man of ordinary courage, it being sufficient to constitute duress that one party to the transaction is prevented from exercising his free will by reason of the threats. The payment of money, to which the party has no legal claim, made under duress of such threats, is not the voluntary act of the payor, and can be recovered back.

When we consider that the action to recover money paid by reason of coercion, threat, compulsion or undue influence is an action to recover money received, to which the defendant was not entitled, and which in equity and good conscience he should not be allowed to withhold from the payor, and, therefore, the law implies a promise on the part of the payee to repay it, it would seem that money wrongfully obtained from any person under such circumstances could be recovered, if the coercion or undue influence as a matter of fact actually existed. As was said in *Barry* v. *Equitable Life Assurance Society* (59 N. Y. 587, 592): " But where there exist coercion, threats, compulsion and undue influence there is no volition. There is no intention nor purpose, but to yield to moral pressure, for relief from it. A case is presented more analogous to a parting with property by robbery."

In the present case the defendant alleges and by demurrer the plaintiff admits that the plaintiff did coerce, force, and by duress and undue influence compel the defendant to execute the notes by threats which are stated, and that the defendant believing that plaintiff would carry out the threats did sign the notes, and that by reason of the undue influence, duress and compulsion resulting from said threats has paid all of said notes except $1,325.

The plaintiff does not claim that the defendant was under any legal or moral obligation to pay the money, and admits that by threats it extorted the money from him. It may be, if the issue were tried, that facts would be adduced that would tend to show that defendant was not actuated by fear of the threats, or that the relations of the defendant with his sister and brother-in-law were such that there would have been no compulsion in the threats. But here the fact of compulsion is admitted. I, therefore, am of opinion that the counterclaim was available to this defendant.

The second contention of appellant is that the counterclaim in effect alleges the compounding of a felony. In order to so hold it is necessary to imply two things: *First,* that the charge made by the plaintiff's officers was true; and *second,* that they agreed in consideration of the giving of the notes not to prosecute Bloch, or to withhold from the authorities the evidence of his felony.

It is now well settled that on a demurrer to a pleading the pleading must be liberally construed in favor of the pleader, and that a demurrer for insufficiency can only be sustained when it appears that admitting all the facts alleged or that can by reasonable and fair intendment be implied from them the counterclaim fails to state a cause of action. (*Coatsworth* v. *Lehigh Valley R. Co.,* 156 N. Y. 451, 457; *Tew* v. *Wolfsohn,* 174 id. 272, 274.) The learned counsel argues that as it is not alleged that plaintiff's statement to him that Bloch " was guilty of having criminally appropriated funds of the bank " was false, the intendment is that it was true. In this he overlooks the fact that the counterclaim is not to recover money paid in reliance upon false and fraudulent representation, but to recover money paid under duress and undue influence. He further contends that it must be implied that the plaintiff agreed to refrain from prosecution. In my opinion such a construction violates not alone the rule of liberal construction above stated, but also the rule that the presumption is that the parties did not intend to commit a crime, and if there are two possible inferences to be drawn, one of which would lead to criminality and the other to innocence, the latter must be given effect. It is not alleged that Bloch had committed a crime, but that the plaintiff's officers stated

that he had; nor is there any allegation that the plaintiff's officers agreed, nor can it be .implied that they agreed to forbear to prosecute Bloch, and in consideration of that promise the notes were given.

In regard to a plea that a bond was given to compound a felony, it has been stated in a well-reasoned opinion by Judge COWEN, writing for the Court for the Correction of Errors, that it must allege either that a criminal prosecution had been instituted and an agreement made to stop or in some way embarrass the prosecution, or if no prosecution had been instituted, but a felony or other crime had been committed, the party knowing the fact takes a promise or obligation in consideration of forbearing to prosecute. In the first case the truth or falsity is not material, for the public have an interest that such prosecution should be carried on to conviction or acquittal. In the second, unless a crime has been committed, the public have no interest in the matter. The most that can be said is that statements were made which if true showed that a felony had been committed, and defendant had notice thereof. The opinion then continued: " If the notice be false, it is indeed no more than a stipulation concerning his civil rights. No mischief is done; and a naked intent to do it, however exceptionable in morals, is not tangible by the municipal law. When a crime has in fact been committed, there is more than an intent. The transaction may then result in a public mischief." (*Steuben County Bank* v. *Mathewson*, 5 Hill, 249, 252 *et seq.*)

The cases of *Catskill National Bank* v. *Lasher*, *No. 1* (165 App. Div. 548; affd., 221 N. Y. 551) and *Haynes* v. *Rudd* (102 id. 372), on which Mr. Justice SMITH relies, are clearly distinguishable from the instant case. Neither of those cases arose upon the pleadings, but the question involved was the sufficiency of the proof of the agreement to compound a felony. In the *Catskill Bank* case the defendants knew that their names had been forged as indorsers on the note discounted by the bank; the defendants knew that a constable was waiting outside their residence with a warrant for the arrest of their son and brother respectively. After the guaranty was given the warrant was returned to the justice of the peace who

issued it, and the information and warrant were thereupon destroyed. The court held that these facts were sufficient to establish an agreement to compound a felony. In the *Haynes* case the judgment was reversed and a new trial granted because of the refusal of the trial justice to charge as requested, " that if the compounding of a felony entered into and formed a part of the consideration of the note, the plaintiff could not recover," and also " that if the motive of the plaintiff in giving the note was in part for the purpose of compounding a felony, he would not be entitled to recover." The court held this was error, stating: " Within the rule already laid down, if the consideration of the note was in any way affected by the compounding of a felony, or it entered into the same, or such a motive actuated the plaintiff in any respect, then the contract was illegal, and should not be upheld." The rule adverted to had been theretofore stated as follows: " Whether the parties stood *in pari delicto* depends upon the fact whether the evidence proved that the note in question was given for compounding a felony. If the testimony established that such was the case, then both parties must be regarded as equally in fault, and the court will not lend its aid to either in enforcing a contract of such a character because it is illegal and void." The radical distinction between the instant case and the *Haynes* case is that here, without allegation of a fact tending to show an agreement to compound a felony, the court at Special Term held that on a demurrer all the facts necessary to constitute such a defense may be inferred and judgment given on such inference as a matter of law, while in the *Haynes* case, with all the facts in evidence, it was held to be a question of fact for the jury.

In my opinion it cannot be held that the counterclaim shows that there was an agreement to compound a felony. If such is the fact, if the plaintiff's officers knew that Bloch had committed a felony, and made an agreement to compound it in consideration of the defendant's giving the notes, it will be a good reply to the counterclaim, and if proved will defeat defendant's recovery. The defendant is not required to negative a possible defense to the counterclaim.

In my opinion, the order overruling the demurrer should be affirmed, with ten dollars costs and disbursements, with

leave to the plaintiff to withdraw the demurrer and to reply within ten days on payment of said costs and ten dollars costs awarded to defendant by the order appealed from.

DOWLING, J., concurs.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.