NASHVILLE LUMBER CO. *v.* FOURTH NATIONAL BANK.

(*Nashville.*    February 4,   1895.)

BILLS AND NOTES.    *Liability upon fraudulent indorsement.*

The transfer of a negotiable note, by which an accommodation indorser is made liable to a *bona fide* holder for the ultimate benefit of the transferer, who knew the indorsement was *ultra vires* and void, makes the transferer liable to such indorser for the damage sustained, for which suit can be maintained before payment of note.

Cases cited and approved:  8 L. R. A., 253; 2 L. R. A., 249; 12 N. Y., 313; 73 N. Y., 305, 269; 107 N. Y., 159; 3 N. Y. S. R., 309; 33 Hun, 250; 97 N. Y., 324.

Cases cited and distinguished: 120 Mon., 424; 82 N. Y,, 396.

FROM  DAVIDSON.

Appeal from  Circuit  Court  of  Davidson  County. J.  W.  BONNER,  J.

GRANBERY  &  MARKS  for  Lumber  Co.

P.  D.  MADDIN  for  Bank.

WILKES,  J.    This  is  a  suit  for  damages  for wrongfully  transferring  negotiable  paper  to  an  inno- cent  holder  for  the  purpose  of  imposing  upon  the complainant,  as  indorser,  a  liability  that  would  not

have existed if the note had not been so transferred, and thereby securing an advantage for the transferer of the paper. There was a demurrer to the declaration, which was sustained by the Court, and plaintiff appealed, and has assigned errors.

The case, as made out by the declaration, is that certain notes made by the Bond Lumber Company had placed upon them the indorsement of the Nashville Lumber Company. This indorsement was made by the secretary of the Nashville Lumber Company, not only for accommodation, but without any legal authority, and was *ultra vires* and void. The defendant bank held the notes thus indorsed, with legal notice of their infirmity when made and indorsed, and, while so holding them, the plaintiff company further notified it that the indorsement was without consideration, illegal, and void, and that the company would recognize no liability on account of the same.

Prior to maturity, the defendant bank indorsed the notes to the Merchants' National Bank of Louisville, and had them rediscounted by that bank. The maker of the notes was insolvent when the notes were transferred to the Louisville bank, and the declaration states that the Nashville bank fraudulently rediscounted the notes for the sole purpose of creating a liability against the plaintiff company which did not before exist, and, because of the creation of this liability, plaintiff claims the right to sue. Judgment has been rendered in favor of the Louisville bank against plaintiff company for the amount of the

notes, it not being able to defend against the Louisville bank, and a part of the same has been paid. Such is the case as made out in the bill. Several of the grounds of demurrer are not well laid, but we treat them together, as raising the real question at issue in the cause, which may be briefly stated as follows:

Can the holder of negotiable paper, upon which there is the void indorsement of a corporation, known to be void by the holder, transfer it to a third party with no knowledge of the infirmity, and thus create a liability against the indorser, which did not exist in the hands of the holder before transfer? The gist of the action is the knowingly transferring the paper for the express purpose of creating such liability as did not exist before the transfer, and by which the transferer is to be benefited.

While some special objections are raised by the demurrer to the form of the declaration and the statements contained in it, these objections are more technical than real, and the effect of the demurrer is virtually to concede that the defendant bank had no right to recover upon the paper when it made the transfer, and that it was transferred to the Louisville bank, apparently in due course of trade, for the express purpose of enabling that bank to collect the note despite the infirmity in it, the proceeds to be held for the use and benefit of the Nashville bank, and thus imposing a liability on the indorser that did not exist while the Nashville bank held the note.

On the other hand, plaintiff concedes that the Nashville bank might, if holding in good faith, have transferred the note in due course of trade, and made plaintiff liable to the transferee, without liability against it, for such transfer; but the gravamen of the charge is that the transfer was made not in due course of trade, so far as the Nashville bank was concerned, but fraudulently, to enable the Louisville bank, as an apparently innocent holder, to collect the proceeds and hold them for the use and benefit of the Nashville bank, thus enabling the Nashville bank, through the Louisville bank, to collect the note from plaintiff as indorser, which it could not do if it retained the note in its own possession.

The plaintiff insists that, while the notes affected by this infirmity, so far as the Nashville bank is concerned, were in the hands of that bank, it had two remedies to protect itself—one to enjoin the transfer of the notes till the indorsement was erased, and the other to notify the holder of the illegality of the indorsement, and of its non-liability on account of it. It is said the former course was doubtful and embarrassed, as the plaintiff company could not allege insolvency of the Nashville bank, nor that it was about to make the transfer. Hence, the latter course was pursued, and the claim now is for damages for making the transfer under the circumstances. We have been cited to no case directly in point, and perhaps there is none to be found,

though we think the principles involved have been settled upon a somewhat different state of facts in several cases.

The case of *Metropolitan Elevated Railway Co.* v. *Kneeland*, 8 L. R. A., 253, is relied on. That was an action for damages by the corporation against its directors, first, for illegally voting a salary to the president of the company, and, second, authorizing the issuance of negotiable notes therefor, which went into the hands of an innocent holder. The Court held that no liability attached to the directors for voting the salary, for that, being illegal, created no liability, but that such of the directors as voted to issue the negotiable notes were liable, because such notes did create a liability when they came into the hands of an innocent holder. The Court said: ''We think the cases relating to this subject rest upon the principle that a person who fraudulently places in circulation the negotiable instrument of another, whether made by him or his apparent authority, and thereby renders him liable to pay the same to a *bona fide* purchaser, is guilty of a tort, and liable for the value of the note. The essential injury common to all cases of this character is the fraudulent imposition of liability. Hence, there should be a common remedy, whether it is called an action for conversion or in the nature of a conversion, or a special action on the case.''

The case proceeds: ''In what respect do the wrongful acts of the directors who negotiated the

notes differ from those cases which were held to authorize an action for conversion or an action in the nature of conversion of negotiable paper? Is there not in each the same presumption of damages springing from a liability wrongfully imposed? Were not all of these actions founded on the fact that the maker, real or apparent, of a negotiable instrument had, through the wrongful acts of another, become chargeable, so that he could be compelled to pay such instrument, which would not have ripened into a valid obligation against him but for such wrongful act?"

There are numerous cases holding a party liable for the unauthorized conversion of negotiable paper. In *Decker* v. *Mathews*, 12 N. Y., 313, it is said, in substance, that the gravamen of such action is the wrongful act of the defendant in causing a note without value, except to a *bona fide* holder, to become valuable by a sale thereof to such a purchaser as could enforce it against the plaintiff, and the right of action accrues as soon as the transfer is made, and before payment enforced.

In *Thayer* v. *Manly*, 73 N. Y., 305, defendant fraudulently induced plaintiff to execute and deliver to him these notes, but, before they matured, plaintiff demanded their return to him, which was refused. It was held that, as defendant had it in his power when suit began, to dispose of the notes to a *bona fide* holder, in whose hands they would have been valid, plaintiff was entitled to recover their full

value, which might be discharged by a return of the notes.

In *Farnham* v. *Benedict*, 107 N. Y., 159, defendant being in possession, without title, of certain town bonds that had been fraudulently issued through his procurement, and which were void in fact, but apparently valid, sold them to *bona fide* purchasers, and thus rendered them valid and binding on the town, which was compelled to pay them. It was held that he was liable to the town for the amount of the bonds, and that an action lay either in the nature of trover for the face of the bonds or for money had and received for the money realized therefrom, according to the rule laid down in *Comstock* v. *Hier*, 73 N. Y., 269.

In *Betz* v. *Daily*, 3 N. Y. S. R., 309, it was held that, in an action by a partner against his copartner and others for fraudulently making notes in the name of the firm and negotiating them to innocent holders, the cause of action was complete when the wrong was done, and that payment of the notes was not essential to recovery, the Court holding that the injury was done when the notes were first negotiated.

In *Ontario* v. *Hill*, 33 Hun, 250, the defendants were held liable for wrongfully issuing the negotiable notes of a town, some of which had gone into the hands of innocent holders. This case was afterwards reversed, but not on this point. See *Ontario* v. *Hill*, 99 N. Y., 324. See, also, *Haas*

v. *Sackett*, 2 L. R. A., 249, and cases there cited.

In the case at bar, it is proper to remember that the Nashville bank had title to this paper as against the maker, and, so far as the maker is concerned, its transfer was in no sense a conversion of the paper, but it did not have the legal right to the plaintiff's indorsement, nor any right to pass it to another. Nevertheless, the transfer put the legal title of the paper and its indorsement in the Louisville bank, which had no notice of the infirmity of the paper, and hence the plaintiff could not defend against its suit. It must be borne in mind that the case at bar is not the case of an indorser who has received value for his name and credit, and who then seeks to avoid the contract, in which case he must refund the money, or be denied relief, and hence many of the cases cited for the bank do not apply, and need not be commented on.

The case of *Freeman* v. *Venner*, 120 Mass., 424, is specially relied on by defendant bank, but in that case the plaintiff, upon his own showing, could not impeach the defendant's title to the note, nor his right to transfer that title to another, and it is not therefore analogous to this.

The case of *Solinger* v. *Earle*, 82 N. Y., 396–400, is also relied on, but in that case the party who sought damages for the unauthorized use of his note was denied relief because he was guilty of a

legal wrong in putting the note into existence, and the Court repelled him because of this wrong.

In this case at bar, however, the plaintiff company did not put its indorsement into circulation, but it was made without consideration, for accommodation, and without authority by its secretary, and without knowledge of the directory.

The case, as presented to us by the declaration and demurrer, is that of a holder of paper upon which it cannot legally recover against an indorser transferring that paper to a third person so as to enable such person to collect the paper from the indorser, not for the transferee's benefit and in due course of trade, but for the use and benefit of the transferring bank, and thus indirectly holding the indorser liable when the transferring bank could not regularly so hold it. The principle would be the same if the bank at Nashville had held the note of the plaintiff on which it was maker, and which for any reason was void, and had before maturity transferred it to the Louisville bank, in order to enable it to collect it for account of the Nashville bank. In each case it is an appropriation to its own use by forms of law of the credit and money of the indorser or maker to which the Nashville bank had no right, and we think the case falls within the reason of the cases here cited.

We are of opinion there is error in the ruling of the Court below, and it is reversed, and cause remanded for trial.