## NATIONAL FIRE INSURANCE COMPANY v. ITASCA LUMBER COMPANY.

### QUEEN INSURANCE COMPANY v. SAME.[1]

January 28, 1921.

Nos. 22,093, 22,094.

**Insurance—concealment of sales and cancelation—forfeiture because of false swearing.**

Actions were brought by two fire insurance companies to recover as damages the amounts paid to the holder of the policies to settle a loss. The actions were brought on the ground that settlement was procured by the fraudulent concealment of the existence and subsequent cancelation of certain contracts for the sale of a portion of the property insured. The property consisted of mill wood. The contracts were made after the policies were issued and were canceled after the fire. Held:

(1) That the evidence presented a question for the jury with respect to the quantity of wood burned, the quantity saved, and whether enough wood was saved to enable the defendant to fulfil the contracts.

(2) That defendant's failure to inform the insurance companies of the existence of the contracts and their cancelation did not avoid the policies.

(3) That the fact that the wood sold had not been segregated in defendant's yard and that all the wood was in its possession gave defendant an insurable interest in the property.

(4) That false swearing which will work a forfeiture of insurance must relate to a material matter and be wilful and intentional. As a general rule it is for the jury to say whether there has been such false swearing.

(5) That the trial court erred in directing verdicts in plaintiffs' favor.

[1]Reported in 181 N. W. 337.

Two actions in the district court for Hennepin county to recover $2,475, respectively, the amount paid under fire insurance policies. The cases were tried together before Bardwell, J., who at the close of the testimony denied defendant's motion for a directed verdict in each case and directed a verdict in favor of plaintiff in each case for $2,475 and $2,500, with interest, respectively. From orders denying its motions for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*Powell, Carman & Cain,* for appellant.

*G. W. Buffington* and *J. H. Sapiro,* for respondent.

LEES, C.

These actions were brought to recover damages for a fraud alleged to have been perpetrated by defendant in collecting insurance on mill wood covered by policies issued by plaintiffs. The two cases were consolidated for trial and are here on defendant's appeal from an order denying its alternative motion for judgment or for a new trial following directed verdicts for the plaintiffs.

The wood was insured in June, 1912. The policies were in the standard form. Defendant had a sawmill at Minneapolis which it had ceased to operate and was selling off the wood in its yard. In July and August, it made written contracts of sale with divers purchasers, covering 4,550 loads of wood. They were in the same form and after the recitals these words appear:

"The party of the first part * * * hereby sells and agrees to hold for and at the risk of the party of the second part until January 1st, 1913, ——— loads millwood at * * * $1.60 per load * * * now located between 24th and 25th avenues north * * * in the city of Minneapolis. * * * The said second party * * * agrees to remove all of the above mentioned wood from the ground it now occupies before January 1st, 1913."

The contracts were signed by defendant and by the several purchasers, who gave their notes for the purchase price. All the notes fell due prior to November 4, 1912, the date of the fire, except those given by the Flour City Fuel & Transfer Company. On October 28, an inventory was taken of the wood then in the yard. It showed that there were

5,675 loads. Prior to that date a considerable quantity had been taken out by the holders of the contracts. Between October 28 and November 4, from 369 to 448 additional loads were taken from the yard. The fire destroyed the larger portion of the wood then remaining. Immediately thereafter another inventory was taken. It showed that 1,709½ loads had been saved. The day after the fire defendant sent an agent named Martin to the purchasers of the wood, with instructions to cancel their contracts and return their notes. The flour city company's contract was canceled with the rest. After the insurance was collected, this contract was renewed. On November 12, defendant submitted sworn proofs of loss as follows:

Wood on hand Oct. 28, 1912, according to inventory ....5,675     loads
Deduct subsequent deliveries on orders ...............  385¾ loads

                                                        5,289¼ loads
Deduct wood saved according to inventory after fire ....1,709½ loads

                                                        3,579¾ loads

At $1.60 .........................$5,727.60
Less salvage as agreed .............   200.00

        Total ......................$5,527.60

The proofs stated that defendant owned the wood that was burned, that no one else had any interest in it, and that there had been no transfer or change in the title or possession of the property since the policies were issued. The proofs were accepted and the loss paid, and about five years later these actions were brought to recover as damages the amounts so paid.

1. The quantity of wood remaining after the fire was in dispute. Martin was a witness for plaintiffs. It appeared from his testimony that 2,736 loads were taken from the yard after the fire. This was 1,025 more loads than were saved if the proofs of loss were correct. It is difficult to account for the discrepancy. Defendant suggests that the inventory made after the fire was so carelessly taken as to be unreliable. Plaintiffs suggest that, to magnify the loss, defendant intentionally understated the quantity of wood saved. The jury might have found that

the discrepancy was due to an honest mistake or to wilful deception. The effect of a finding either way will be considered later. The fact remains that 2,736 loads remained after the fire. All this wood might have been delivered to fulfil the contracts. As we have noted, the contracts called for 4,550 loads. Martin testified several times that 1,771 loads had been delivered before the October inventory was taken. At another time he testified that about 1,200 loads had been so delivered. The jury might have found that his first statement was correct. It also appeared that between October 28 and November 4 at least 369 additional loads were taken from the yard. It did not appear whether they were taken by the holders of the contracts or by other purchasers. It is not unreasonable to suppose that some of them were delivered to apply on the contracts, for such deliveries had been and were being made from time to time. If only 43 of these loads were so taken, enough wood remained to fill all the contracts, assuming that 1,771 loads had been delivered prior to October 28, and the jury might have so found. If such were the facts, all the wood burned belonged to defendant and none of it had been transferred and there had been no change in title or possession of the burned wood. If the jury had so found, payment of the loss could not have been avoided on the ground that there had been a change in the title or possession.

2. The standard form provides that the policy shall be void if the insured attempts to defraud the company either before or after the loss. It was alleged in the complaints that defendant obtained the cancelation of the contracts for the purpose and with the intent of deceiving plaintiffs and of concealing the evidence of the fact that wood had been sold after the policies were issued, and that plaintiffs were thereby misled and induced to pay the full amount of the insurance to their damage. If enough wood was left after the fire to enable defendant to fulfil its contracts, it was not collecting insurance on wood owned by others, and in this respect there was no fraud. The question in which the companies were interested was not who was the owner of the wood saved, but who owned the wood burned and how much was burned. Defendant claimed that 3,579 loads were burned. Whether that was so was a question for the jury. If it was so, defendant committed no fraud in that particular in making the proofs of loss.

Granting for the sake of the argument that defendant concealed from plaintiffs the fact that it had made and canceled the contracts, what are the legal consequences that follow? Could plaintiffs have successfully resisted payment of the policies on that ground, even though defendant sustained the loss claimed? The language of a policy is to be construed with reference to the nature of the property to which it is applied and the purpose for which it is kept. DeGraff v. Queen Ins. Co. 38 Minn. 501, 38 N. W. 696, 8 Am. St. 685. The mere fact that defendant had sold a portion of the wood covered by the policies would not avoid them. It was not contemplated that defendant should not sell any wood. Its stock of wood was like a stock of merchandise kept for sale by a merchant, although it is true the stock was not being replenished as in the case of the ordinary mercantile establishment. Sales from a stock and the removal thereof will not forfeit a policy, though it contains a non-alienation clause, according to decisions cited in 2 Cooley, Briefs on Ins. p. 1746. If all the wood sold had been removed before the fire, there could be no question about defendant's right to recover for the loss of what remained. If all the wood sold had been placed in separate piles, and only the remaining piles had burned, defendant's right to recover would be equally clear. In fact, the wood required to fill the contracts was neither removed from nor segregated in the yard. Under the circumstances defendant and the purchasers would probably be regarded as co-owners of all the wood in the yard, according to their respective interests, with defendant in possession as such co-owner. Nash v. Brewster, 39 Minn. 530, 41 N. W. 105, 2 L. R. A. 409; Mackellar v. Pillsbury, 48 Minn. 396, 51 N. W. 222. If so regarded, defendant would have an insurable interest in the wood. King v. Hartford Fire Ins. Co. 133 Minn. 322, 158 N. W. 435, Ann. Cas. 1918D, 861. We have recently had occasion to consider the question of what constitutes an insurable interest in property and refrain from going over the ground again. See Banner Laundry Co. v. G. E. Casualty Co. supra, page 29.

If defendant's insurable interest in the property equalled the amount collected on the policies, plaintiffs have not been damaged, regardless of the truth or falsity of the statements in the proofs of loss, and, of course, in an action for fraud, damages must be shown or there can be

no recovery. The application of this elementary principle in actions similar to these is illustrated by London & L. Fire Ins. Co. v. Liebes, 105 Cal. 203, 38 Pac. 691, and Commercial Bank of Milwaukee v. Firemen's Ins. Co. 87 Wis. 297, 58 N. W. 391.

Plaintiffs earnestly insist that defendant's failure to disclose the existence of the sale contracts and their cancelation was an attempt to defraud within the meaning of the policies. Martin testified that defendant's manager, Gerhard, directed him to return the notes to the purchasers of the wood and take up the contracts, and that, when Gerhard's attention was called to the fact that the wood was left in the yard at the buyer's risk, he said that he was going to take the contracts and lay them before the insurance companies. Gerhard testified that he told Martin to cancel the contracts and return the overdue notes, and that he said nothing about laying the contracts before the companies or the adjuster. Asked if it was not his purpose to cancel the contracts to make it appear that defendant had title to all the wood so that he could put in a claim for all the insurance, he answered that the title had not passed to purchasers who had not paid for their wood, that before the fire he instructed the yard man not to deliver any wood until it was paid for, and that the notes had not been accepted in payment for the wood, but as evidence of the amounts to be paid and the time of payment. If the jury believed Gerhard, they were bound to find that there was no actual intent to defraud the companies and no attempt to commit a fraud.

It is well settled that to constitute fraud or false swearing, which will work a forfeiture of the insurance, there must be a false statement wilfully made with respect to a material matter with the intention of thereby deceiving the insurer. 14 R. C. L. 1343; 4 Cooley, Briefs on Ins. pp. 3415, 3416; 7 Supp. Cooley, Briefs on Ins. p. 1435; note to Alfred Hiller Co. v. Ins. Co. of N. A. 32 L.R.A.(N.S.) 457. Our own cases point to a recognition of the settled rule, although it is not expressly stated in the opinions in the two cases which refer to it: Hamberg v. St. Paul F. & M. Ins. Co. 68 Minn. 335; 71 N. W. 388; Hodge v. Franklin Ins. Co. 111 Minn. 321, 126 N. W. 1098.

As a general rule, it is for the jury to say whether there has been any fraud or false swearing. 1 Clement, Ins. p. 285.

We are of the opinion that the evidence entitled defendant to have the question of the alleged fraud submitted to the jury. In this connection and in view of another trial, we may add that Gerhard should have been permitted to testify to his purpose or intention in omitting a reference to the contracts in the proofs of loss. Berkey v. Judd, 22 Minn. 287; 1 Dunnell, Minn. Dig. § 3231.

Our conclusion is that the court was not justified in withdrawing the cases from consideration by the jury and directing verdicts for plaintiffs. There must be a new trial of the actions and the order denying it is therefore reversed and a new trial granted.