# W. L. SILLIMAN AND OTHERS v. C. L. DOBNER.[1]

November 6, 1925.

No. 24,835.

**Conditional delivery of promissory note.**

1. Where promissory notes are given to a payee pursuant to a written contract and it is orally agreed that the notes are to be used by the payee with a particular person for a certain purpose, it does not, in law, constitute a "conditional delivery."

**Proof of fraud.**

2. Proof of oral contemporaneous statements may be made for the purpose of showing fraud.

**When coconspirator is liable in damages.**

3. To render coconspirator liable in damages, it is not necessary that he should be one of the original conspirators. It is sufficient if he later, at any time before the consummation of the purpose of the conspiracy, actively enters into the common design, to make him, in law, a party to every act previously or subsequently done by any of the others in pursuance of it.

**Question for jury.**

4. Upon the facts, stated in the opinion, it was for the jury to say whether a conspiracy existed.

[1] Reported in 205 N. W. 696.

**Liability independent of conspiracy.**

5. Regardless of the existence of a conspiracy, one of the alleged conspirators might be liable for his own acts.

**When person is liable for fraudulent acquisition and transfer of notes.**

6. Where a person, knowing that the payee procured promissory notes by fraud, fraudulently acquires and transfers them for the purpose of imposing upon the maker a liability which did not otherwise exist and as a result the maker is compelled to pay them, the person so fraudulently acquiring and transferring them is liable to the maker in damages.

**Writing not a contract.**

7. A writing set forth in the opinion construed as an offer and not as a contract.

1. See Bills and Notes, 8 C. J. p. 1030, § 1344.
2. See Evidence, 22 C. J. p. 1215, § 1621.
3. See Conspiracy, 12 C. J. p. 612, § 181.
4. See Conspiracy, 12 C. J. p. 642, § 242.
5. See Conspiracy, 12 C. J. p. 646, § 257.
6. See Torts, 38 Cyc. p. 511.
7. See Contracts, 13 C. J. p. 281, § 86.

Action in the district court for Cottonwood county. The case was tried before Nelson, J., and a jury which returned a verdict in favor of plaintiffs. Defendant Dobner appealed from an order denying his motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*Wilson Borst* and *Allen & Allen,* for appellant.

*Elliott, Doll & Coursolle* and *O. J. Finstad,* for respondents.

WILSON, C. J.

On May 24, 1920, The National Rendering Company, herein referred to as the company, was an existing corporation organized to sell and operate rendering plants. Its officers were C. J. Colby, president, H. S. Murphy, vice-president and J. A. Colby, secretary-treasurer. These men with William M. Colby were the stockholders. On the date mentioned the company agreed to furnish

and install for plaintiffs a rendering plant at Windom, Minnesota, for which they gave their notes for $8,000. This plant was built and these notes were paid.

On the same date the company made another written agreement in reference to a rendering plant to be built at Jackson, Minnesota. The company was party of the first part and all the parties to this action, except C. L. Dobner, were parties of the second part. The contract called for the installation of such plant, that the parties of the second part should pay $10,000 therefor, and then lease the plant to the company for five years. One Sequist of Sioux City, Iowa, was the manufacturer and builder of the plants. In these transactions J. A. Colby, William M. Colby, C. J. Colby and H. S. Murphy acted for the company and defendant C. E. Menor acted with plaintiffs. He was for a few months cashier of a bank at Windom in which plaintiffs were interested. The parties of the second part gave their notes for the $10,000 to the company for the plant to be constructed and installed at Jackson. These notes were intrusted to J. A. Colby, one of the makers and secretary of the company, for the purpose of being negotiated with Mr. Sequist so that he would carry the notes, discount them, retain $7,000 as the purchase price and return $3,000 which was to be deposited with plaintiff Hanson to be used in buying hogs and to meet operating expenses. In violation of this purpose, Colby sold them to appellant for $8,500 and never accounted to plaintiffs for any part thereof. The Jackson plant was never built. Appellant sold the notes to an innocent purchaser for value who collected the full amount from plaintiffs. They now sue the defendants for the amount so paid.

Plaintiffs were given a verdict for $12,982 against C. L. Dobner, H. S. Murphy and C. E. Menor, service not having been made on the Colbys who had left the state. Dobner alone has appealed from an order denying his alternative motion for judgment notwithstanding the verdict or for a new trial.

The plaintiffs claim that there was a conditional delivery to the company in this, that the notes were to be used only with Sequist for the purposes above mentioned. The facts as claimed by plain-

ttiffs are to the effect that the delivery of the notes to the payee was accompanied by a verbal agreement that the notes were to be used only with Sequist. The written contract specified that the $10,000, evidenced by the notes, was in payment of the plant. The notes on their face are negotiable and by their terms are unconditionally payable to the payee. Parol contemporaneous evidence is inadmissible to contradict the terms of a written instrument. A "conditional delivery" recognized by the courts as susceptible of proof by parol evidence, is limited to those cases in which the agreement of the parties was that such instrument should become operative as a contract only upon the happening of a future contingent event. The theory is that this permits a party to show, not a variation from a written contract, but rather that no contract was in fact made because its obligation never commenced. Parol evidence is admissible to show want of contract but not to show a change in a contract. Westman v. Krumweide, 30 Minn. 313, 314, 15 N. W. 255; Smith v. Mussetter, 58 Minn. 159, 59 N. W. 995; Mendenhall v. Ulrich, 94 Minn. 100, 101 N. W. 1057; Liberty State Bank v. Metropolitan Church Assn. 154 Minn. 248, 191 N. W. 414; Skelton v. Grimm, 156 Minn. 419, 195 N. W. 139; Nat. Finance Co. v. Mitchell, 157 Minn. 47, 195 N. W. 542. The record does not permit a holding that there was a conditional delivery. In fact the allegations of the complaint and the proofs negative the idea of a conditional delivery. Gwinn v. Ford, 85 Wash. 571, 148 Pac. 891. The cases of McWethy v. Norby, 143 Minn. 386, 173 N. W. 803, and Farmers State Bank v. Skellet, 149 Minn. 266, 183 N. W. 831, relate to the wrongful use of accommodation paper which has no vitality—no real inception— until negotiated. Such is a condition to its becoming a binding obligation. In the instant case the notes were given to the payee as an original obligation. Wade v. Nat. Bank of Commerce, 144 Minn. 187, 174 N. W. 889, must not be regarded as an authority for an enlargement or extension of the doctrine of "conditional delivery."

The rule above mentioned, however, does not prevent the proof of oral contemporaneous statements for the purpose of showing fraud. The record would support a finding by the jury that these

notes were fraudulently procured, and that they were negotiated to appellant by the payee in breach of faith and under such circumstances as amounted to fraud. Notice of an executory agreement between the maker and the payee of a note that the payee should do certain things, does not affect a purchaser who has no notice or knowledge that the payee has broken his contract. But the basis of liability, if any, in this case, is fraud and not breach of contract.

The complaint alleged a conspiracy on the part of the defendants to defraud plaintiffs by representing to them that the company would construct and equip a rendering plant for plaintiffs at Jackson which would be worth $10,000; by representing further that Murphy, Menor and the Colbys were men of financial responsibility and that each of them would sign notes for $10,000 with plaintiffs, and that the notes thus given would be delivered to the manufacturer of the equipment necessary for said plant, and would be used in no other manner. That such representations were made without any intention to construct and equip such plant, but for the sole purpose of obtaining the plaintiffs' notes without consideration and then transferring them to an innocent purchaser for value before maturity. That in furtherance of such conspiracy a contract and lease were made which defendants never intended to perform, but which were used as aids to get such notes. That relying on such representations, which were false, plaintiffs signed such notes and placed them in the hands of these men representing the company. The court submitted to the jury the question of a conspiracy among the defendants.

The evidence is insufficient to connect appellant with the inception of the conspiracy. However, to render a person liable in damages resulting from a conspiracy to which he is a party, it is not necessary that he should be one of the original conspirators. It is sufficient, if he later, at any time before the consummation of the purpose of the conspiracy, actively enters into the common design, to make him, in law, a party to every act previously or subsequently done by any of the others in pursuance of it. 5 R. C. L. 1094; 12 C. J. 612, and cases cited.

Prior to appellant's purchasing the notes, he called upon plaintiffs and informed them that he was about to buy their notes from the company and asked for financial statements which were given. Plaintiffs testified that they had informed appellant that it was all right for him to buy their notes given for the Windom plant, but for him, under no consideration, to buy the $10,000 notes which were given to be used with Sequist for the purchase of the plant to be erected at Jackson, and that the plant had not been built and nothing had been done towards its erection. There is evidence to show as an incidental circumstance that on June 7, J. A. Colby and Mr. Murphy were at the hotel in Windom with appellant, but their presence was not made known to plaintiffs. There is both direct and circumstantial evidence tending to connect appellant with the conspiracy, although not with its origin. Where several persons are found to be working for the accomplishment of the same definite object, it may be inferred that they are pursuing a preconcerted plan or arrangement to accomplish that object. Wolfgram v. Dill, 37 S. D. 282, 157 N. W. 1059.

Ordinarily a conspiracy must be established from a number of circumstances, none of which, standing alone, would support the conclusion, or suffice to do more than raise a mere suspicion. Fraud may seldom be proved by direct evidence. Secrecy is of its very essence. While difficulty of proof does not dispense with the necessity of proof and mere suspicious facts and circumstances will not be accepted as legal proof, the courts are vigilant in their rule that no infringement be made upon the duties of the triers of fact. The record will justify the jury in finding that, at a certain stage of the transaction, appellant came upon the scene and helped to carry it through, and participated in the fruits of the enterprise to, at least, the extent of $1,500, and that he did this with knowledge of the fraud, or at least under circumstances charging him with knowledge thereof. We believe there was sufficient evidence to justify the court in submitting the question of conspiracy to the jury.

The court in its charge to the jury said this:

"But if you find that there was no conspiracy, or that there is no evidence to establish a conspiracy, if you find from the evidence that the defendant Dobner was the means after he had notice of the defect in the title of the note, that he was the means of conveying the notes into the hands of an innocent holder, then he would be liable and your verdict should be against him notwithstanding you find there was no conspiracy."

The foregoing is an erroneous statement of the law because it permits the imposition of liability, even though appellant acted honestly and without fraud. Dishonesty and the fraudulent purpose of the conspiracy of impressing a liability upon plaintiffs in causing them to pay these notes without getting anything for their money to the benefit of the wrongdoer is the gist of this action. Metropolitan Elev. Ry. Co. v. Kneeland, 120 N. Y. 134, 24 N. E. 381, 8 L. R. A. 253, 17 Am. St. 619; Detwiler v. Bainbridge Grocery Co. 119 Ga. 981; 47 S. E. 553; Nashville Lumber Co. v. Fourth Nat. Bank, 94 Tenn. 374, 29 S. W. 368, 27 L. R. A. 519, 45 Am. St. 727. Plaintiffs were entitled to a charge covering their right to a verdict against appellant, even if they did not find the existence of a conspiracy. Such liability, however, would be predicated upon the theory that he fraudulently acquired and transferred the notes, with knowledge of the breach of faith, for the purpose of imposing upon the plaintiffs a liability, incident to a bona fide holder in due course, to which they would have no defense. If he so acted, he would be liable regardless of the existence of a conspiracy. Jakula v. Starkey, 161 Minn. 58, 200 N. W. 811; Howland v. Corn, 232 F. 35, 40, 146 C. C. A. 227; 12 C. J. 584. Such conduct would amount to a wrong and being followed by damages would constitute a cause of action in tort. The term "fraud" in such case is used synonymously with malice, which is the basis for liability in a wrongful interference with another's business or contract rights, as used in Tuttle v. Buck, 107 Minn. 145, 119 N. W. 946, 22 L. R. A. (N. S.) 599, 131 Am. St. 446, 16 Ann. Cas. 807, and Bacon v. St. Paul Union Stockyards Co. 161 Minn. 522, 201 N. W. 326, and cases cited; Carnes v. St. Paul Union Stockyards Co. 164 Minn. 457, 205 N. W. 630, 206 N. W. 396.

It is claimed by appellants that it appears from Exhibit 1 in the evidence that a rendering plant at Eyota was, by agreement of the parties, substituted for the Jackson plant, and that this explains the failure of the construction of the plant at Jackson. The exhibit is addressed to the National Rendering Company and signed by plaintiffs and C. E. Menor. It reads thus:

"In conformity with the discussion at the meeting here this p. m., regarding the Rendering Plant at Eyota, Minnesota, we the undersigned hereby accept your offer of substituting the Eyota Plant for the Jackson Plant named in our joint agreement with you, said substitution however to be only temporary and to be optional with the undersigned at any time to exchange said interest in the Eyota Plant to the same interest in the plant to be built in this territory at Worthington, Slayton, or some other town selected as the best location for the erection of the original plant in our joint contract.

"As per agreement, all receipts are to be handled through the Farmers State Bank of Windom, Minn. For which transactions a proper record will be kept by one of the undersigned members of the company to be subject to the inspection of any of the members at any time."

No answer of any kind was made to this communication by the addressee. We construe it as a mere offer which was never accepted. It was apparently a qualified acceptance of an offer, and required the assent of the company before it could become a binding obligation. Ignoring the fact that this instrument was not signed by all of the parties of the second part in the Jackson contract and treating it as though it was made in behalf of all, the construction of this instrument was a question of law; that being the only evidence tending to prove a substitution, there was, upon the record, no question to submit to the jury relative to the substitution of another plant. Hence we do not pass upon the instructions given in reference to substitution.

A new trial is granted.