**JOSEPH SUPORNICK & SON, Inc. v. IMPERIAL ASSUR. CO. OF NEW YORK et al.**

**Clv. No. 1608.**

United States District Court
D. Minnesota, Third Division.
Nov. 28, 1949.

Wilfrid E. Rumble, of Doherty, Rumble, Butler & Mitchell, St. Paul, Minn., and Sydney W. Goff, St. Paul, Minn., ·for plaintiff.

Paul C. Thomas, of Thomas, Bradford & King, St. Paul, Minn., and Leavitt R. Barker, of Dorsey, Colman, Barker, Scott & Barber, Minneapolis, Minn., for defendants.

DONOVAN, District Judge.

Plaintiff sued as assignee of rights of the insured under fire insurance policies issued by the defendants. Defendants admit the issuance of the insurance, the occurrence of the fire and the assignment of the loss by insured to plaintiff, and allege fraud and misrepresentation on the part of insured and plaintiff. Plaintiff's theory of suit and trial is that of adjustment claimed to have been arrived at by the parties, and which plaintiff contends amounts to a compromise and settlement. Defendants contend the policies of insurance and the adjustment are void because of the alleged fraud.

It is undisputed that a fire occurred at the place of business of the insured in the City of St. Paul, on the evening of September 25, 1948. The insured was the last to leave the store. The cause of the fire is unknown. Plaintiff, a public adjuster, ob-

tained the assignment of the assured's interest, and immediately put about twelve employees to work taking inventory. Defendants retained three adjusters, by the names of George H. Manners, Arnold F. Johnson and John T. Hart, Jr. Said adjusters had visited the site of the fire before they were hired by defendants. Upon their next visit they found plaintiff engaged in taking inventory, and immediately joined in the work for the purpose of checking plaintiff's count of materials salvaged and inventoried. Manners knew plaintiff was a fast worker, and Johnson had worked for plaintiff prior to going into the adjustment business for himself, hence he was familiar with plaintiff's methods of taking inventory. Hart more or less relied on Manners, because the latter represented more than one of the defendant insurers. Manners, Johnson and Hart jointly participated in the checking of the inventory, and subsequently met for the purpose of planning the finesse they would adopt when consulted by plaintiff in connection with the contemplated adjustment. This plan was followed by the adjusters, and plaintiff's claim, as a result, was reduced to some extent.

The adjusters then reported to their principals, recommending settlement in the total sum of $15,790.00, and advising that the loss had been thoroughly investigated and carefully checked, and the claim reduced in accordance with the findings.[1]

One of the defendants had forwarded a check in payment of its proportion of the proposed adjustment, but withheld delivery when it was decided to investigate further. An additional firm of adjusters was employed by defendants to check the loss and inventory. According to plaintiff and the insured, the situation had changed to some extent, and articles considered a total loss had been removed to the city dump.

The court will not repeat the testimony relating to the recheck of the inventory by the new adjusters, except to say that it was very complete and disclosed discrepancies of a type to arouse suspicion, and it is upon this that defendants predicate their charge of fraud. Defendants' reply brief summarizes the gist of their defense in these words:

---

1. "22-42285 October 7, 1948
"To The Companies In Interest
"Gentlemen:
 Re: Sam Gifis db/a St. Paul Cycle
 Supply Company
 St. Paul, Minnesota.
 Imperial Assurance #OC 9691
 Northern-N.Y. #OC 320456
 Loss—September 25, 1948
 Agent—Lilley & Lilley, St. Paul, Minnesota

"Proof
Enclosed please find proof showing adjustment of the above claim in the amount of $15,790.00, with our recommendation for payment.

"Coverage
On contents of building situated 126 W. 7th Street, St. Paul, Minnesota.

"Date And Origin
Loss occurred on September 25, 1948 at 6:43 P.M., cause unknown. The local Fire Prevention Bureau, as well as the National Board investigated this loss quite thoroughly and have given the assured a clean bill of health in every way. The reason for the National Board checking this claim carefully is that a brother of the assured who has no interest in this business, sustained a bad loss in Minneapolis approximately two years ago. That loss was thoroughly investigated at that time. This fire started in the basement about one hour after the assured had left the building. Some of his employees had locked the building and left at 6:00 o'clock. The fire burned up through the first floor. Considerable smoke and water damage resulted to the entire stock. This was a stubborn fire to fight, in fact twelve firemen were overcome by the smoke. Practically all of the stock in the basement was a total loss and there was considerable damage to stock on the first floor.

"Adjustment
Claim was referred to Public Adjuster, Joseph Supornick, who was inclined to be fair in the adjustment. An assignment to Mr. Supornick is attached to proof.

"Summary
The assured is doing business as usual and we would recommend continued coverage.
"Thank you for this assignment.
 "Yours very truly,
 [signed] George H. Manners
"GHM:A Manager."

"Fraud is a grave and serious charge. Defendants are fully aware of that fact. They are also fully aware that to constitute a defense, fraud must be proven by clear and convincing evidence and they accept that burden in this case and contend they have sustained it."

█ Plaintiff predicates his right to recover on the adjustments arrived at between him and the three adjusters who at that time represented defendants. Manners, Johnson and Hart were authorized to act for defendants in adjusting the loss. They were acquainted with plaintiff's reputation as a public adjuster, and familiar with his hurry-up methods from previous contacts with him in the carrying on of their business as adjusters. Hence it may be assumed that they were forewarned, and governed themselves accordingly, in checking the inventory and determining the loss. The adjustment is one of the steps in settlement of the loss claimed to have been sustained, and in the absence of fraud, mistake or misrepresentation, it should be paid.

█ As a general rule, it is for the trier of the facts to say whether there has been any fraud or false swearing. Hence the court is here primarily concerned with a question of fact. The policy provision against fraud embraces the whole period from the making of the contract until proofs are furnished. Gies v. Bechtner, 12 Minn. 279 (Gil. 183). Fraud vitiates the insurance policy,[2] if present.

Does the record of this case sustain defendants' burden proving fraud on the part of plaintiff or the insured "before or after the loss?" Defendants, in their briefs and oral arguments, concede that fraud must be proved by clear and convincing evidence in order to carry the burden of proof incident thereto.

Counsel for all parties are agreed that there is "more to the subject litigation than meets the eye." However, there is ample record furnished the court made up of fac-tual controversy, without resort to that hidden from the eye.

Did plaintiff or the insured fraudulently exaggerate both value and damage in the inventory and proofs of loss, with intent to obtain payment from defendants of a sum in excess of the actual loss met with? Considering the evidence from the standpoint of the burden placed on the defendants, I cannot find such a conclusive showing of exaggerated count or values in the criticised inventory as to be able to say that such conduct amounted to intentional fraud. Powers Dry Goods Co. v. Imperial Fire Insurance Co., 48 Minn. 380, 51 N.W. 123.

█ It is well settled that to constitute fraud or false swearing which will work a forfeiture of the insurance, there must be a false statement wilfully made with respect to material matters with the intention of deceiving the insurer. There is much in the record disclosing gross carelessness on the part of the insured, particularly from the standpoint of his disregard for an accurate system of accounting and keeping records of the business he was transacting from day to day. Any attempt on his part to overcome this deficiency by guile or explanation merely added confusion to previous error, and it is not difficult to understand why defendants looked askance at the proofs containing a sworn statement that the cash value of the property at the time of loss was $29,559.22.

█ The facts impress me that what defendants rely on as fraud was, at most, mistakes of judgment and inaccuracies due to haste and the loose methods used in taking and preparing the inventory. Mistakes of judgment or errors of count in making up the inventory do not constitute probative circumstances amounting to fraud.

In National Fire Insurance Co. v. Itasca Lumber Co., 148 Minn. 170, at page 175, 181 N.W. 337, at page 339 the court said:

"It is well settled that to constitute fraud or false swearing, which will work a for-

---

2. The policy provides that:
"* * * the policy shall be void * * * if the insured shall make any attempt to defraud the company either before or after the loss * * .*."

feiture of the insurance, there must be a false statement willfully made with respect to a material matter with the intention of thereby deceiving the insurer. * * * As a general rule, it is for the jury to say whether there has been any fraud or false swearing." It will thus be seen that the presence or absence of intentional fraud is a question of fact.

 There can be no serious question about the relationship between the adjusters and the defendants they represented in arriving at the adjustments. They were acting for and on behalf of the defendants they were authorized to represent. 45 C.J.S., Insurance, §§ 1101, 1102, pages 1337–1339. There is much authority for holding that the present suit is based on the adjustment, rather than on the policy of insurance, and that in the absence of fraud or mistake the settlement is binding. McCallum et al. v. National Credit Insurance Co. et al., 84 Minn. 134, 86 N.W. 892. But, as I have already indicated, the adjustment may be set aside for fraud or mistake. National Fire Insurance Co. v. Itasca Lumber Co., supra. Where the action, as here, is brought on the adjustment, the burden of proving fraud on the part of the insured is on the insurer. 46 C.J.S., Insurance, § 1318, pages 416–418. The burden does not shift. Kobin v. St. Paul Fire & Marine Ins. Co., 150 Wis. 591, 137 N.W. 753.

 The appearance of overvaluation presented a vexatious problem to the court in the instant case, and if the burden of proof had not been on the defendants, it may have proved fatal to plaintiff's case. To exaggerate count or value is a serious matter when claim for loss is based on a contract such as is here controlling. The authorities are generally agreed that a mere overvaluation in proofs of loss is not conclusive of fraud. Wiesman v. American Insurance Co., 184 Wis. 523, 199 N.W. 55, 200 N.W. 304. Unless intent to deceive is proved to the satisfaction of the trier of the facts, it will be presumed that the insured was innocent of fraud or false swearing. While in certain respects plaintiff and the insured have indulged in poor judgment and imprudent conduct creative of suspicious circumstances, this does not constitute fraud. Sprague, Warner & Co. v. Kempe, 74 Minn. 465, 77 N.W. 412; Silliman et al. v. Dobner, 165 Minn. 87, 205 N.W. 696; 3 Dunnell Digest (2nd Ed.) § 3839.

In some respects this case is not unlike that of Alma State Savings Bank v. Springfield Fire & Marine Insurance Co., 268 Mich. 631, 256 N.W. 573,[3] 574.

---

3. In the Alma State Savings Bank case, plaintiff assignee of the insured obtained judgment on a directed verdict. Quoting from the court's opinion, it appears that:

"Defendant and eleven other companies carrying insurance on the property damaged sent experienced adjusters to the scene about March 31, 1932. The adjusters examined the premises. * * *

* * * * * * *

"The proofs of loss were executed, returned to the adjuster, signed by it, forwarded to defendant, and received.

* * * * * * *

"In October its general agent, who had become suspicious of the cause of the fire in May, made further investigation and, in conversation with plaintiff's officers, informed them that, while he would neither admit nor deny liability, the company was inclined to the latter. After waiting some months, this suit was begun.

* * * * * * *

"* * * defendant claims the policy is void, because assured swore falsely in his proofs of loss, under the provision:

"'This entire policy shall be void * * * in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.'

"The clause is effective. * * *

* * * * * * *

"An adjuster, where the assured knows no limitations on his authority, may bind the insurer as to the amount of the loss. When the adjuster signed the proof of loss prepared by it and executed by the assured, and forwarded it to the company, it became a contract between the company and the assured, ascertaining the amount of the loss according to the terms of the policy. Wilms v. New Hampshire Fire Ins. Co., 194 Mich. 656, 161 N.W. 940.

"In proceeding to compromise without reference to the proof of loss or reliance on it, defendant waived the right to later attack it."

237

Despite the strong case made by defendants at trial, in helpful briefs and during able oral argument, I am not persuaded to declare a forfeiture of the insurance. I have not overlooked the points and authorities submitted by diligent counsel. My conclusion that fraud has not been proved is arrived at after consideration of the record and careful study of the thought-provoking briefs submitted to me by learned counsel for defendants. I do not feel that the "defense of fraud which defendants so earnestly urge is either frivolous, or a Machiavelian scheme" on the part of defendants. I think Sam Gifis, the insured, brought much of the difficulty he has met with upon himself by his slip-shod business practices. The use of experts by defendants, in its good faith attempt to unravel the puzzle created by the fire and the lack of approved accounting, was entirely proper. Obviously, the contrast between the experts and the insured was sharp and showed the latter at a disadvantage. The case was well tried, and I think the large record has not overlooked any facts pertinent to the issues involved.

Plaintiff may submit findings of fact, conclusions of law, order for and form of judgment, on appropriate notice to defendants.

Defendants may have an exception.