## IMPERIAL ASSUR. CO. OF NEW YORK et al. v. JOSEPH SUPORNICK & SON, Inc.

### No. 14163.

United States Court of Appeals
Eighth Circuit.
Nov. 9, 1950.

Leavitt R. Barker, Minneapolis, Minn. (Paul C. Thomas and Thomas, Bradford & King, St. Paul, Minn., and Dorsey, Colman, Barker, Scott & Barber, Minneapolis, Minn., on the brief), for appellants.

William C. Green, St. Paul, Minn. (Sydney W. Goff, Wilfrid E. Rumble, Silver, Green & Goff and Doherty, Rumble, Butler & Mitchell, St. Paul, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment in favor of plaintiff in an action brought by it to recover damages on account of loss and damage to certain personal property caused by fire, the property being within the coverage of certain fire insurance policies issued by defendants, appellants herein. Defendants admitted the issuance of the insurance policies, the occurrence of the fire and the assignment of the loss by the insured to plaintiff.

It was alleged that immediately following the fire proper notice was given to the insurance companies and that the defendants "through their agents, representatives and adjusters, went upon the premises occupied by the 'd insured's business, examined and checked into the loss and damage, requested and received full and complete information pertaining thereto from the said insured and his premises and entered into negotiations with the said insured and his representatives for the full, final and complete settlement and satisfaction of the claims of said insured for said loss and damage under each and all of said policies of insurance. That shortly thereafter and on or about the 30th day of September, 1948, pursuant to such negotiations, the said defendants, and each of them, through their agents, representatives and adjusters, offered, promised and agreed to pay to the said insured, and the said insured agreed to accept, the sum of $15,790.00 in full and complete compromise, settlement and satisfaction of all of the claims of the insured for said loss and damage under said policies of insurance, and each of them." It was then alleged that proofs of loss in accord with said settlement agreement were prepared at the instance and request of the defendants' representatives. The plaintiff asked judgment for the amount of the loss as adjusted and settled.

In their answer defendants admitted, among other things, that following the happening of the fire "plaintiff and the insured filed with the adjusters acting for the defendants sworn statements respecting the claimed loss sustained by plaintiff and the insured"; that these proofs and demands were rejected. It is then alleged as an affirmative defense that "plaintiff and the insured wilfully, wrongfully, knowingly and fraudulently withheld material information from the adjusters of the defendants, wilfully, fraudulently and knowingly misrepresented material facts within the knowledge of plaintiff and the insured but not in the knowledge of the defendants or their adjusters; that plaintiff and the insured wilfully, knowingly and fraudulently exaggerated the amount of loss and damage sustained as the result of said fire and wilfully and knowingly deceived the defendants and their adjusters." Defendants also alleged that the statements made and furnished by plaintiff and insured "were made wilfully and with intent to deceive the defendants, were known by plaintiff and insured to be false, did in fact deceive the

defendants who were induced by plaintiff and insured to accept such statements in reliance thereupon, and upon plaintiff's and insured's further misrepresentations that all information furnished to the defendants by them were true and correct. Defendants did rely upon such material and fraudulent withholding by plaintiff and insured of material facts and upon said material misrepresentations and falsifications made by plaintiff and insured to defendants' prejudice, and said proofs of loss would never have been furnished in their present form but for said withholding of material facts and said misrepresentations of plaintiff and insured."

It was the theory of plaintiff that the adjustment was in the nature of a compromise and settlement and it bases its action upon the adjustment or settlement rather than upon the insurance policies.

The fire occurred in the place of business of the insured in the City of St. Paul, Minnesota, on September 25, 1948. Plaintiff, a public adjuster, secured an assignment of the insured's interest and immediately following the fire placed about twelve employees to work taking inventory. Defendants retained three adjusters by the names of George H. Manners, Arnold F. Johnson and John T. Hart, Jr., who before their employment had visited the site of the fire. Immediately upon being employed by defendants they went to the site of the fire and found plaintiff engaged in taking inventory and they joined in the work for the purpose of checking plaintiff's account of materials salvaged and inventoried. Manners knew that plaintiff was a fast worker and Johnson had worked for plaintiff prior to going into the adjustment business for himself. Hart voluntarily participated in the checking of the inventory and subsequently met with the other adjusters representing defendants for the purpose of agreeing upon a method of negotiating settlement. The plan as agreed upon was followed and plaintiff's claim was reduced to some extent on the insistence of the defendants' adjusters. The adjusters then reported to their respective companies recommending settlement in the total sum of $15,790.00, advising that the loss had

been investigated and carefully checked and plaintiff's claim reduced. It appears that one of the defendants forwarded a check in payment of its portion of the adjustment but it was decided to make further investigation and an additional firm of adjusters was employed by defendants to check the loss and inventory. It was the claim of the plaintiff and insured that the situation had changed to some extent before this second check was undertaken and that articles considered a total loss had been removed to the city dump.

The court found all the issues in favor of the plaintiff and entered judgment in accordance with its findings. On this appeal defendant seeks reversal on the ground that the court erred in making controlling findings in favor of the plaintiff, particularly findings numbered 10, 11, 12, 14 and 16, and in making its conclusions of law based upon its findings.

Findings of the trial court are presumptively correct and will not be set aside unless clearly erroneous, due regard being given to the opportunity of the trial court to judge of the credibility of the witness. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. This case is not before us on trial de novo but for the purpose of determining questions of law. Cleo Syrup Corp. v. Coca-Cola Co., 8 Cir., 139 F.2d 416 and cases there cited; Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672. This action was tried to the court without a jury and in considering the question as to whether or not there was substantial evidence to sustain the court's findings we must accept as true all facts which the evidence reasonably tended to prove and the plaintiff was entitled to the benefit of such favorable inferences as might reasonably have been drawn from the evidence, direct or circumstantial. The attack upon the findings is bottomed on the contention that the undisputed evidence established as a matter of law that defendants were entitled to judgment in their favor "and the findings of the trial court are clearly against the weight of the evidence, or induced by an erroneous view of the law." We can scarcely concern ourselves with the

question as to the weight of the evidence. It is first contended that the finding that the adjusters for defendants entered into negotiations for settlement of the claims is erroneous because the adjusters were without authority to make settlement. This question we think is not raised by the answer. This would be an affirmative defense which was not pleaded, nor indeed does it seem to have been relied upon in the trial court. The defendants pleaded, not that the adjusters were without authority, but that they were deceived by the fraudulent and wilful misrepresentations of the insured and the plaintiff, and it was alleged that these misrepresentations deceived defendants and that they were induced to accept the statements in reliance upon the representations of the plaintiff and the insured. It was also alleged that the defendants were prejudiced. If they accepted these statements and relied upon them, they must have resulted in the settlement pleaded and the real defense pleaded and relied upon was not that the adjusters were without authority but that they had been deceived by the fraud of the plaintiff and the insured.

The burden of proof on this issue was, of course, upon the defendants and the charge of fraud must be proven by clear and convincing evidence. As has been observed the inventories and the appraisals were all checked and rechecked, the insured being represented by an experienced adjuster, and the defendants being represented by three experienced adjusters. The question of intent is one of fact to be determined by the trial court. The evidence with reference to the manner in which the inventories and appraisals were made was in dispute. While it is claimed that the undisputed evidence showed that the plaintiff and the insured inventoried and appraised secondhand goods as new, we think the record does not sustain that contention. The testimony of Mr. Supornick, which is quoted by defendants in their brief, is as follows:

"Q. Did you distinguish in your inventory between new and secondhand merchandise? A. You could tell by the value. I didn't state it in the inventory exactly secondhand, but you could tell by the price if you look at the inventory."

This witness also testified as follows:

"Q. So that your inventory and the inventory that was prepared under your supervision all represent new articles? A. No, sir.

"Q. New merchandise? A. No, sir, it was not.

"Q. Well, what did it represent? A. It was to represent the value of that particular item. If he had a secondhand frame, if the frame was $18.00, it was listed $6.00 or $8.00, as such."

The testimony at least was susceptible of the interpretation that as a basis of value, wholesale prices were used, but it did not follow that old goods were priced as new. There were three adjusters representing four insurance companies, all present and participating. There is no claim that the defendants' adjusters were guilty of any fraud or collusion. A witness who had been in the employ of the insured and had been discharged by him, testified that in his judgment twenty-five per cent of the goods in the basement of the building where the fire occurred were secondhand. His testimony was indefinite and uncertain and, of course, his credibility was a matter to be determined by the trial court. All of these adjusters checked and counted the merchandise reported in the inventory for quality. Manners checked the items on the first floor, checking every item on that floor as to value, and corrections were made in the inventory. Mr. Hart counted the merchandise in the basement and his count compared favorably with the count of plaintiff's adjuster although there were some corrections. The entire inventories were checked, not only as to quantity and quality but as to valuations.

While it was alleged that defendants relied on the alleged misrepresentations made by plaintiff and the insured, it appears that they were represented by their own adjusters who made investigation as to the facts. It is a fundamental principle of law of universal application that in order to entitle one to relief because of false rep-

resentations, the person claiming to have been deceived must have relied upon the representations and must have been induced thereby to act to his injury. It is equally well settled that if the complaining party resorts to sources of information other than the representations made in order to ascertain the facts, he is scarcely in position to claim that he has relied upon the representations so made.

 Defendants later employed other adjusters who attempted to reinventory and reappraise the property and got a substantially less value. Mere overvaluation in proofs of loss, however, is not conclusive of fraud. There must have been an intent to deceive, and in the absence of satisfactory proof of intent to deceive, the over-valuation will be presumed to be innocent and not fraudulent. The trial court in a memorandum opinion filed at the time of filing its findings, stated among other things that,

"The facts impress me that what defendants rely on as fraud was, at most, mistakes of judgment and inaccuracies due to haste and the loose methods used in taking and preparing the inventory. Mistakes of judgment or errors of count in making up the inventory do not constitute probative circumstances amounting to fraud."

The Supreme Court of Minnesota in National Fire Insurance Co. v. Itasca Lumber Co., 148 Minn. 170, 181 N.W. 337, 339, among other things said:

"It is well settled that to constitute fraud or false swearing, which will work a forfeiture of the insurance, there must be a false statement willfully made with respect to a material matter with the intention of thereby deceiving the insurer. * * *

"As a general rule, it is for the jury to say whether there has been any fraud or false swearing."

 In the instant case, the court sitting as a jury has determined the issues adversely to the claim of the defendants and the findings of the court on the vital issue of intent can not be said to be clearly erroneous. The judgment appealed from is therefore affirmed.